ALCORN v. STATE OF INDIANA.

[No. 1168S182. Filed December 31, 1970. No petition for rehearing filed.]

*Kenneth M. Waterman, Daniel A. Roby,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *J. Frank Hanley, Kenneth M. McDermott, Edward Squier Neal,* Deputies Attorney General, for Appellee.

JACKSON, J.—Three separate affidavits were filed in the Allen Circuit Court, each charging appellant with the crime of Second Degree Burglary; said affidavits read in pertinent part as follows:

"That on or about the 26 day of October A.D., 1965, at the County of Allen and in the State of Indiana John T. Alcorn did then and there unlawfully, feloniously and burglariously break and enter into the certain one and two story wood frame building and structure of John Johnson, located at 2236 Wayne Trace, Fort Wayne, Allen County, Indiana, the same not being then and there a place of human habitation, with intent then and there, therein and thereby to unlawfully and feloniously and burglariously take, steal, and carry away the goods, chattels and personal property of Allen County Lumber Company, being then and there contrary to the form of the statute in such case made and provided."

"That on or about the 25 day of October A.D., 1965, at the County of Allen and in the State of Indiana John T. Alcorn did then and there unlawfully, feloniously and burglariously break and enter into the certain one story cement block building and structure of Charles Zuber, 2319 Wayne Trace, Fort Wayne, Allen County, Indiana, the same not being then and there a place of human habitation, with intent then and there, therein and thereby to unlawfully and feloniously and burglariously take, steal, and carry away the goods, chattels and personal property of Interstate Bakeries Corporation—Dolly Madison Bakery, being then and there contrary to the form of the statute in such case made and provided."

"That on or about the 26th day of October A. D., 1965, at the County of Allen and in the State of Indiana John T. Alcorn did then and there unlawfully, feloniously and burglariously break and enter into the certain 2 story brick building and structure of Roy Grace, located at 1621 S. Anthony, Fort Wayne, Allen County, Indiana, the same not being then and there a place of human habitation, with intent then and there, therein and thereby to unlawfully and feloniously and burglariously take, steal, and carry away the goods, chattels, and personal property of Jack E. Lee and Robert Buough d/b/a Johnny's 21 Club Tavern being then and there contrary to the form of the statute in such case made and provided."

On May 31, 1966, the appellant moved the court for a consolidation of those cases pending against him; said motion was granted the same day. On January 26, 1967, the appellant was arraigned, entered a plea of not guilty to the crimes as charged, and waived his right to trial by jury. The cause was thereafter tried to the court without the intervention of a jury, and, after all of the evidence had been presented, the court found appellant guilty as charged. On March 30, 1967, the court sentenced appellant to the Indiana State Prison for not less than two (2) years nor more than five (5) years on each charge, said sentences to be served concurrently.

Appellant filed his motion for new trial on February 24, 1967, said motion reads in pertinent part as follows:

"Comes now the defendant in the above entitled cause, and moves the Court for a new trial thereof upon the following grounds, and for the following reasons:

1. The Court erred in overruling defendant's motion to suppress evidence.

2. The Court erred in admitting State's Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22 over defendant's objection that the evidence was the result of an unlawful search and seizure.

3. That the finding of the Court is not sustained by sufficient evidence.

4. That the finding of the Court is contrary to law."

Appellant's motion for new trial was overruled by the court on March 14, 1967. Appellant's sole Assignment of Error on appeal is that: "1. The Court erred in overruling appellant's Motion for New Trial."

From the evidence adduced at the trial of this cause, viewed most favorably to the State, it appears that on the night of October 25, 1965, or shortly after midnight on October 26, 1965, three business establishments, in close proximity to each other in the city of Fort Wayne, Indiana, were forcibly entered and burglarized. John Mays, the manager of Johnny's 21 Club, testified that the back door to the tavern had been forcibly opened, a juke-box and cigarette machine broken into, and some liquor had been removed from the premises. Marl Campbell, the manager of the Dolly Madison Bakery, testified that the back door to the bakery had been opened, the salesroom door broken off its hinges, and certain cakes and pastry stolen. Charles Knuth, an employee of the Allen County Lumber Company, testified that the company had been forcibly entered through the backdoor, and that a coke machine, a small vault, and certain desks had been broken into and ransacked. He also stated that State's Exhibits 9 through 14 (4 screwdrivers, 1 hatchet, and 1 crowbar) had been stolen from the company.

Sergeant Don Shaw of the Fort Wayne Police Department observed a car, at approximately 2:15 a.m. on the night in

question, run a stop sign while coming from Edsall Avenue onto New Haven Avenue in the city of Fort Wayne. He followed the car for approximately one mile before he stopped it. The appellant was the driver of the car, and one Paul Woods was a passenger therein. As Sergeant Shaw was checking appellant's operator's license, he (Shaw) glanced in the back seat and observed, on the floor, numerous items of merchandise, such as Dolly Madison pastries, bottles of liquor, and cartons of cigarettes. Sergeant Shaw immediately placed appellant under arrest for the traffic violation. Thereafter, appellant was taken to police headquarters in a patrol wagon, and his car was towed to the police garage and impounded.

At approximately 3:30 a.m., while appellant's car was in the police garage, Detective John O'Leary caused the doors of the car to be opened and photographs taken of the contents of the car. The articles found in the car were then removed, photographed, taken to the Detective Bureau, and later admitted into evidence at the trial of this cause. Detective O'Leary effected the removal of these items from appellant's car without first obtaining a search warrant.

Appellant contends that the trial court erred in admitting State's Exhibits 1 through 22 into evidence, over the objections of his counsel, for the reason that said exhibits were obtained by means of an unlawful search of his automobile and subsequent seizure of the items contained therein. He advances the following arguments in support of his primary contention: (1) his arrest for the misdemeanor (running a stop sign) was illegal for the reason that the said alleged misdemeanor was committed outside the presence of the arresting officers; therefore, because all of the aforementioned exhibits were obtained as the fruit of this illegal arrest, it was error for the trial court to admit them into evidence, (2) assuming arguendo that the arrest was legal, the warrantless search of appellant's automobile was illegal in that it was not incidental to the arrest, i.e. said search was not made until after the automobile had been impounded and

towed away from the scene of appellant's arrest to the police garage. The appellant has properly saved these alleged errors for our consideration by means of his Motion to Suppress, filed prior to the trial of this cause, and his objections at the time the exhibits complained of were offered into evidence. Appellant's Motion to Suppress reads in pertinent part as follows:

"Comes now defendant, John T. Alcorn, by his attorney, Bruce E. Bloom, who, being duly sworn upon his oath, deposes and says:

1. That on or about the 26th day of October, 1965, defendant was operating his automobile on Edsall Avenue in Allen County, Indiana, and at said time was stopped by police officers of the Fort Wayne Police Department.

2. That upon the stopping of defendant's vehicle the said police officers conducted a search thereof by shining their flashlights in and about said vehicle, and in the course of such search, discovered certain articles of tools, equipment, and other assorted merchandise and personal property.

3. That subsequent to the search, defendants were arrested and the property described herein above was seized by the arresting officers.

4. That the search above described was conducted without benefit of a search warrant, that the arresting officers had no reasonable grounds to conclude that defendant had committed a felony, nor was the arrest made by virtue of a misdemeanor committed in the officer's presence.

WHEREFORE, defendant prays that the Court suppress and declare inadmissible all evidence of any items of personal property found within defendant's automobile at the time of the illegal search and seizure, and all evidence of conversations between the arresting officers and the defendant, and for all further and proper relief in the premises."

We feel State's Exhibits 1 through 22 were *not* obtained by means of an unlawful search of appellant's automobile and a subsequent illegal seizure of the items found therein and were, therefore, properly admitted into evidence by the trial court in the proceedings below. We reach this conclusion by holding that the activities of Sergeant

Shaw and Detective O'Leary in the case at bar did not give rise to that type of search prohibited by the 4th Amendment to our Constitution, but more properly fell within the ambit of what has become known as the "plain view doctrine." Under this rule, evidence concerning that which is in plain view is not the product of a search. *United States* v. *Barone* (1964), 330 F. 2d 543; *Koscielski* v. *State* (1927), 199 Ind. 546, 158 N. E. 902.

> "* * * (T)he word 'search' connotes uncovering that which is hidden, prying into hidden places for that which is concealed. It is not a search to observe what is open to view."

*McDonald* v. *United States* (1948), 166 F. 2d 957. In *Marshall* v. *United States* (1970), 422 F. 2d 185, the 5th Circuit Court of Appeals stated that:

> "A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest. *Haerr* v. *United States*, 5 Cir. 1957, 240 F. 2d 533, 535."

In the case at bar there was no evidence of a "prying into hidden places for that which is concealed," or of an exploratory quest. Sergeant Shaw stated that while he was standing alongside appellant's car checking the latter's driver's license he, at the same time, *"glanced* in the back seat on the floor board" with his flashlight. (Emphasis supplied; Tr. p. 97). By doing so, he observed the cartons of cigarettes, bakery goods, and bottles of liquor above referred to.

> "We do not hold, of course, that every use of a flashlight is not a search. A probing, exploratory quest for evidence of crime is a search governed by Fourth Amendment standards whether a flashlight is used or not. The mere use of a flashlight, however, does not magically transmute a nonaccusatory visual encounter into a Fourth Amendment search. When the circumstances of a particular case are such that the police officer's observation would not have constituted a search had it occurred in daylight, then the

fact that the officer used a flashlight to pierce the nighttime darkness does not transform his observation into a search. Regardless of the time of day or night, the plain view rule must be upheld where the viewer is rightfully positioned, seeing through eyes that are neither accusatory nor criminally investigatory. The plain view rule does not go into hibernation at sunset." *Marshall* v. *United States, supra.*

Appellant questions whether Sergeant Shaw had a right to be where he was when he first observed the items in question. Appellant contends that his arrest on the charge that he ran a stop sign was illegal for the reason that said alleged misdemeanor was not committed in the presence of Sergeant Shaw. To sustain his contention, appellant relies heavily upon the following testimony of Shaw:

"Q. Sgt. Shaw, is it not true that when you first saw the defendant's automobile that morning that it was moving slowly through into the intersection?

A. Yes, sir.

Q. And is it not further true that the stop sign which you have testified to on Edsall Avenue is at least five feet from the intersection?

A. Yes.

Q. I'll ask you if it is not possible from what you observed that morning that the defendant stopped in back of the stop sign and then proceeded out past the stop sign into the intersection?

A. It's possible."

(Tr. pp. 103, 104)

But this Court has stated on numerous occasions that, on appeal, it will neither weigh the evidence nor determine the credibility of the witnesses. *Croney* v. *State* (1969), 252 Ind. 319, 247 N. E. 2d 501; *Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809. Sergeant Shaw stated positively that he personally observed the appellant run the stop sign, and that he thereafter stopped appellant's car to apprise him of that fact. Therefore, Sergeant Shaw was in a

place where he had a right to be at the time he viewed the stolen merchandise in the back seat of appellant's automobile.

> "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Marshall* v. *United States, supra; Harris* v. *United States* (1968), 390 U. S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067.

For the above mentioned reasons, the judgment of the trial court is affirmed.

Arterburn and Givan, JJ., concur. Hunter, C.J., concurs with opinion. DeBruler, J., dissents with opinion.

## CONCURRING OPINION

HUNTER, C.J.—I feel it incumbent upon me to briefly state the reasons for my concurrence with the majority opinion in this case. The crux of the issue is whether the shining of the arresting officer's flashlight into the rear seat area of appellant's automobile constituted a "search" so as to invoke the legal principles recently espoused in the case of *Paxton* v. *State* (1970), 255 Ind. 264, 263 N. E. 2d 636 cited by the dissent. I am in full agreement with the majority's position that the mere shining of the flashlight into the car did *not* constitute a "search" as that term is currently defined by this Court. Nor do I find helpful, as does apparently my dissenting brother, an analysis of the factors that motivated or prompted the officer to shine his flashlight into the rear seat area, for in fact, I find nothing in the record which would aid in such an analysis or lend itself to the conclusions drawn in the dissenting opinion.

There can be no doubt that had the incident here under review taken place in the daytime, the articles "discovered" would have been lawfully found under the plain view doctrine, they being subject to casual view through the car window. The mere fact that the observation was made possible by artificial means rather than with the aid of daylight should

not, in my opinion, alter our analysis of the legal propriety of the police officer's actions.

There being no constitutionally protected "search" here, we need not consider the applicability of the principles stated in *Paxton* v. *State, supra.*

### DISSENTING OPINION

DeBRULER, J.—I dissent from the majority opinion and would reverse the judgment of the trial court with instructions to grant appellant's motion for new trial.

The appellant herein was stopped by police officers at approximately 2:30 a.m. for a traffic violation of running a stop sign. Officer Shaw testified that his purpose in stopping the appellant was to advise him that he had run a stop sign. While checking the appellant's drivers' license, the officer, remaining outside of the appellant's car, probed the back seat by use of a flashlight. After noticing some Dolly Madison cakes, whiskey and cartons of cigarettes on the rear floor board, the officer placed appellant under arrest for running a stop sign. A passenger in appellant's car was then ordered to get out of the car and was placed under arrest for permitting a violation in his presence.

The appellant moved to suppress the evidence seized as a result of this search and the motion was overruled. At trial, appellant again timely objected to the admission of the evidence, said objection being overruled. The overrulings of the motion to suppress and the objection to admission of the evidence constituted reversible error.

I find little doubt that the probing of the back seat and rear floor board of the car with a flashlight falls within the meaning of the word "search".

The majority opinion, in quoting from the case of *Marshall* v. *U. S.*, 422 F.2d 185 (5th Cir. 1970), states that:

"A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action.

The term implies exploratory investigation or quest. *Haerr* v. *United States,* 5 Cir. 1957, 240 F.2d 533, 535."

Clearly, the actions of the arresting officer in the case at bar were in the nature of an exploratory quest or investigation. In the *Marshall* case, the arresting officer shined his flashlight into the car upon the request of a drive-in carhop to investigate a car which had been setting in the drive-in for more than one hour with the car lights burning and the occupant never having placed an order. The Fifth Circuit Court held as admissible a contraband sawed off shotgun seized as a result of the officers having seen it lying next to the accused who was lying asleep on the front seat. That court reasoned that the officer did not conduct a "search" as he was motivated by a desire to render assistance rather than an intent to uncover evidence of contraband or crime. No such altruistic motivation is present in the case at hand. The officer here was conducting an exploratory investigation, in short, a search.

The issue then is whether such a search is lawful when made incident to an arrest for a traffic violation.

This Court recently discussed at some length the permissible scope of a search incident to a lawful arrest for a traffic violation. *Paxton* v. *State* (1970), 255 Ind. 264, 263 N. E. 2d 636.

I believe the case at bar falls within the holding of the *Paxton* case. In that case we said, in accordance with the rule of *Chimel* v. *California* (1969), 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685:

"Thus, it would clearly be unreasonable to sanction a search incident to an arrest, absent other factors, where the arresting officer had no reason to suspect that he was in danger or where there was no probable cause to believe that there was destructible evidence relating to the crime within the suspect's immediate control." 263 N. E. 2d at 640.

Neither of these exigencies were present. Likewise an arrest for a traffic violation of running a stop sign does not give

rise to a search of the automobile pursuant to *Chambers* v. *Maroney* (1970), 399 U. S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, wherein the court held that an automobile might be searched without regard to the officer's safety as possible destruction of evidence, provided there is probable cause to believe that seizable items are contained in the car. No such probable cause exists in the case at bar.

I believe, therefore, that the evidence was obtained as a result of an unlawful search and seizure and was improperly admitted.

NOTE.—Reported in 265 N. E. 2d 413.