**Denver C. MANNING, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 3–783A233.**

Court of Appeals of Indiana,
Third District.

Feb. 20, 1984.

Rehearing Denied March 26, 1984.

☜1210(4)

Ted A. Waggoner, Rochester, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Presiding Judge.

Following a jury trial, Denver Manning was convicted of four counts of receiving stolen property,[1] a class D felony. Manning appeals, raising the following issues:[2]

(1) Whether the evidence upon which Manning's convictions were based was obtained as a result of an illegal search;

(2) Whether the trial court impermissibly commented upon Manning's right not to testify against himself by giving a preliminary instruction which outlined the proceedings and noted that Manning had the option of calling witnesses and presenting evidence; and

(3) Whether the trial court erred in giving Manning an aggravated sentence and in ordering that the sentence on one count be served consecutively with the sentences on the other three counts.

Affirmed as to three convictions; reversed as to one conviction and remanded with orders to vacate Manning's conviction and sentence on that count.

I.

Legality of Searches

On February 15, 1981, Manning was stopped and taken to the Fulton County jail on traffic violations. After Manning had been released, Officer Paul Rayl discovered Manning's wallet and checkbook on the restroom floor. When he went to the M & S Salvage Yard, where Manning was staying, to return the wallet and checkbook, Officer Rayl saw a 1979 maroon Oldsmobile, without a license plate, parked on the property. Officer Rayl was suspicious because he had previously received information that the M & S Salvage Yard handled stolen automobiles, so he shined his flashlight on the windshield and wrote down the vehicle identification number which was imbedded in the dashboard. The next day, Officer Rayl ran a computer check and determined that the Oldsmobile had been stolen. After Rayl verified the theft with the Chicago Police Department, he returned to the salvage yard but did not see the automobile. Rayl obtained a search warrant which provided, in pertinent part:

---

1. IC 1976, 35–43–4–2 (Burns Code Ed., 1983 Supp.).

2. The issues have been consolidated.

"You are, therefore, commanded, in the name of the State of Indiana ... to enter into and upon the real estate utilized by M & S Salvage for its salvage operations, ... and to then and there diligently search for the vehicle described in the Affidavit for Search Warrant, including all of the real estate utilized by M & S Salvage for its salvage operation and also including any buildings or structures on said real estate wherein the vehicle described in the Affidavit for Search Warrant might be sequestered and bring the same, or any part thereof found on said search, forthwith before me at my office to be disposed of according to law."

(Record, p. 4). Accompanied by other officers, Rayl served the search warrant on Marsha Lee Reed and asked her for a key to a large metal storage building on the premises. Reed did not have a key, so the officers cut the padlock on the door of the shed, which was between two and four-tenths of a mile from where Rayl had seen the Oldsmobile. Once inside the shed, Rayl looked for the Oldsmobile[3] while the other officers checked the license plates and VIN numbers of the vehicles in the building, opening the doors of the vehicles and looking under the hoods. The officers ran a computer check and determined that one of the vehicles had been stolen. They examined tools and papers in the shed, photographed the inside of the building and then secured the area because the weather was too bad to search further. The next day, Rayl obtained a second search warrant, based on the information gathered during the search. That warrant provided, in pertinent part:

"You are, therefore, commanded, in the name of the State of Indiana, ... to enter into and upon the real estate uti-lized by M & S Salvage for its salvage operations ... and to then and there diligently search for any stolen vehicles or other items of stolen property, said search to include all real estate utilized by M & S Salvage for its salvage operations and including any buildings or structures on said real estate wherein any stolen vehicles or other items of stolen property might be sequestered, and bring the same or any part thereof found on said search, forthwith before me at my office to be disposed of according to law."

(Record, p. 9).

On February 17, 1981, Rayl and the other officers performed a search pursuant to the second warrant and seized various articles. Subsequently, additional search warrants were obtained and executed. Prior to trial, Manning moved to suppress this evidence, arguing that: first, the actions of Officer Rayl in obtaining the VIN number constituted an illegal search; second, the first warrant did not set forth probable cause for the issuance of the warrant; and third, the search performed pursuant to the first warrant exceeded the scope of that warrant, therefore, the second warrant was invalid because it was based on illegally obtained information. Manning's motion was denied. Manning was tried on twenty counts, contained in two informations. The trial court granted a directed verdict on four counts; the jury found Manning guilty on four counts and not guilty on the twelve remaining counts. The counts of which Manning was convicted involved a 1975 Ford F350 truck owned by Patten Industries, a 1978 axle dump trailer, reported stolen on October 6, 1980, a 1969 Hendrickson truck tractor, and a 1978 Ford pick-up truck.[4]

3. The 1979 maroon Oldsmobile described in the search warrant and supporting affidavit was not in the building.

4. The evidence introduced involved numerous vehicles, parts of vehicles, accessories, and documents. This Court would have appreciated an attempt by the parties to set out clearly the evidence pertaining to the counts upon which the four convictions were obtained and the search warrant(s) pursuant to which that evidence was seized.

Manning was sentenced to four years on each count, with one sentence to be served consecutively to the other three, for a total of eight years.

On appeal, Manning contends that: (1) Officer Rayl's initial actions constituted an illegal search; (2) the search performed on February 16 was illegal because it exceeded the scope of the first warrant; and (3) the subsequent warrants were invalid because they were based on illegally obtained information. He argues that his convictions should, therefore, be reversed.

■ Our review of the record reveals that Manning lacks standing to challenge the seizure of the 1969 Hendrickson tractor and the 1978 Ford pick-up. The Hendrickson tractor was found on U.S. 31 near Argos, Indiana. The Ford pick-up was found in two parts: the cab was pulled out of the Tippecanoe River; the chassis was owned by another person at the time it was seized. Where a defendant has no proprietary or possessory interest in the property being searched or seized, he lacks standing to challenge that search or seizure. *See Hope v. State* (1982), Ind., 438 N.E.2d 273, 274; *Haller v. State* (1983), Ind.App., 454 N.E.2d 76, 80–81. Manning has not shown a proprietary or possessory interest in these items or in the places where they were found; therefore, he cannot challenge the seizure of them.

■ Another of Manning's convictions was based on a stolen 1975 Ford 350 truck which was originally owned by Patten Industries. At trial, Frank Knez and Reginald Blouin testified regarding Patten's ownership of the vehicle. Knez and Blouin identified photographs of the truck and items which were in the truck when it was stolen. Those photographs were admitted into evidence without any objection by defense counsel except counsel's objection that the witness had not properly identified two of the photographs. When a pre-trial Motion to Suppress has been denied, error is not preserved unless a proper objection is made when the evidence is introduced at trial. *Pointon v. State* (1978), 267 Ind. 624, 372 N.E.2d 1159; *Nelson v. State* (1982), Ind.App., 436 N.E.2d 1153. Fur-

thermore, a party may not assert on appeal a different ground for an objection than that given at trial. *Ralston v. State* (1980), Ind.App., 412 N.E.2d 239, 247. By failing to make a specific timely objection based on the legality of the search, Manning has waived his right to seek our review of this issue as it relates to the admission of this evidence.[5]

The final conviction involves a 1978 axle dump trailer. Our review of the record indicates that this property was found in the metal shed on February 16 and is described in the affidavit in support of the second search warrant. When a photograph of the trailer was offered into evidence, a specific and timely objection was made, on the grounds that the evidence was the product of an illegal search.

■ The State contends that the search conducted in the metal shed on February 16 was justified under the "plain view" doctrine. This doctrine, which is generally applied to *seizures* of property, was explained by the United States Supreme Court in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, as follows:

> "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused ... Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." (Citations omitted).

Our Supreme Court has likewise explained the doctrine:

> "Pursuant to the doctrine, a police officer rightfully occupying a particular loca-

---

**5.** Defense counsel did not offer a "continuing objection" on the illegal search grounds until some time after this evidence was admitted.

tion who inadvertently discovers items of readily apparent criminality may properly seize the items; evidence so seized is both admissible as evidence and usable for derivative purposes, for the seizure is not regarded as the product of a search within the meaning of the Fourth Amendment...."

*Lance v. State* (1981), Ind., 425 N.E.2d 77, 78 (citations omitted). This explanation is premised on the rule that what is in plain view is not the product of a search. *Alcorn v. State* (1970), 255 Ind. 491, 265 N.E.2d 413. However, Indiana courts have emphasized that the items must be of "readily apparent" criminality. *Lance, supra; Cochran v. State* (1981), Ind.App., 429 N.E.2d 672. The property must be either contraband or clearly connected to a known crime. *Id.*

■ In this case, the police were on the property pursuant to a warrant. The warrant, however, authorized a search for a 1979 maroon Oldsmobile. Officer Rayl testified that he looked in the shed for the Oldsmobile while the other officers checked the VIN numbers and license numbers of other vehicles in the shed. The criminality of these vehicles was not "readily apparent", and the vehicles had no connection with any crimes known to the police at the time of the search. In order to determine that the vehicles had been stolen, the officers opened the doors and lifted the hoods to search for the VIN numbers, then ran computer checks on the numbers. Clearly the search was extended into places where the maroon Oldsmobile could not have been found. The facts demonstrate that the officers used their presence on the property to improperly conduct a "general exploratory search from one object to another until something incriminating emerge[d]." *Coolidge, supra.* Given the facts and circumstances, the officers had no more than a mere suspicion that the vehicles had been stolen, which does not justify a search beyond the scope of the warrant. *Cf. Cochran, supra.*

■ The search of the metal shed on February 16 exceeded the scope of the first search warrant; therefore, it was illegal. The evidence seized pursuant to the second warrant should have been excluded because the second warrant was based upon illegally obtained information. Manning's conviction on this count must be reversed.[6]

## II.

### Instruction

Manning contends that the trial court impermissibly interferred with his right not to testify against himself by giving a preliminary instruction which provided in part:

"The trial of this case will proceed as follows:

First, after these preliminary instructions, the attorneys will have an opportunity to make opening statements. These statements are not evidence and should be considered only as a preview of what the attorneys expect the evidence will be.

Following the opening statements, witnesses will be called to testify. The State will call its witnesses first since it has the burden of proving its case beyond a reasonable doubt...

The defendant then has the option to also call witnesses and present evidence if he so desires. Since the burden is entirely upon the State to prove its case beyond a reasonable doubt, the defendant does not have to prove anything. If he chooses to he may call witnesses and present exhibits in the same manner as the State's witnesses; then after he rests the State has the right to present rebuttal evidence to which defendant may respond.

When the evidence is completed, the attorneys will make final statements...."

(Record, p. 116). At trial Manning objected to the following two sentences contained in the instruction: "The defendant then has the option to also call witnesses and present evidence if he so desires" and "If

---

**6.** Because of our disposition of this issue, we need not consider whether Officer Rayl's inspec- tion of the 1979 Oldsmobile on February 15 constituted an illegal search.

he chooses to he may call witnesses and present exhibits in the same manner as the State's witnesses." We do not find reversible error in the giving of this instruction.

■ It is the well-established rule in Indiana that neither the trial court nor the prosecutor may comment directly or indirectly upon the defendant's failure to testify. *Williams v. State* (1981), Ind., 426 N.E.2d 662, 666. Although the trial court must instruct the jury to disregard the defendant's failure to testify if such an instruction is requested by the defendant, it may not give such an instruction over the defendant's timely objection. *Parker v. State* (1981), Ind., 425 N.E.2d 628, 630. The failure to give the instruction, if requested, or the giving of the instruction over timely objection constitutes reversible error unless the State proves beyond a reasonable doubt that such error was harmless. *Id.* This rule applies to preliminary as well as to final instructions. *Lee v. State* (1981), Ind., 424 N.E.2d 1011, 1013. Our Supreme Court has long recognized error in statements made by the prosecutor which might be construed as comments upon the defendant's failure to testify. In *Long v. State* (1877), 56 Ind. 182, 185, the prosecutor commented that he would have been pleased to hear from the other side. In *Rowley v. State* (1972), 259 Ind. 209, 285 N.E.2d 646, the prosecutor remarked that not one bit of evidence from the witness stand indicated that the defendant was not guilty. In these cases, the prosecutors' statement constituted reversible error. *Cf. Williams v. State, supra.* (Where defendant was the only person who could contradict the testimony of other witnesses, the prosecutor's comment that their story was the only story the jury had heard was subject to interpretation by the jury as a comment on the defendant's failure to testify. However, because the defendant failed to seek an admonition, which would have been effective, it was not error for the trial court to refuse to declare a mistrial.)

■ In this case, however, the language to which Manning objects contains no direct reference to his right not to testify against himself. The instruction simply sets out for the jury the procedure which the trial may follow. The language at issue emphasizes that the defendant is not required to call witnesses or present evidence. In the context of this preliminary instruction, we do not believe that the language to which Manning objects would be interpreted by the jury as a comment upon Manning's failure to testify. *Cf. Bailey v. State* (1982), Ind.App., 438 N.E.2d 22, 24–25 (*trans. denied*). (Comment by the prosecutor that the jury had heard no evidence of any reason for entering the robbery victim's house other than the intent to commit theft was not a comment on the defendant's failure to testify.)

### III.·

### Imposition of Sentence

Manning was convicted on four counts. He was sentenced to four years on two of those counts, four years on another count, with the sentences to be served concurrently and four years on the fourth count, to be served consecutively. The trial court gave the following reasons for its action:

"The basis for said findings are the following aggravating circumstances:

1. Defendant's substantial previous record including 1955 felony conviction for failure to provide, 1966 allegations and convictions relating to theft of gas and 1978 conviction for criminal mischief.

2. That to impose a lesser or reduced sentence would depreciate the seriousness of defendant's criminal activity.

3. Most importantly, this defendant has clearly participated in carefully planned and orchestrated conduct with the specific purpose of profitable employment activities which conduct was being conducted as a means of livelihood for this defendant and for a lifestyle outside the law

and the mitigating circumstances:

1. These criminal acts were crimes against property and involved no vio-

lence or injury or threat of perjury [*sic*] to any person.

　2. That defendant is an older man 61 years of age and although his health is generally satisfactory his mere age make his health more precarious than other persons."

(Record, p. 210). The court then determined that the aggravating circumstances outweighed the mitigating circumstances. Manning contends that this statement is inadequate and indicates that the sentence was impermissibly based on charges upon which he was acquitted.

　■■■■　The scope of our review is set forth in Ind.Rules of Procedure, Appellate Review of Sentences, Rule 2:

　"(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

　(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed."

A trial court is required to set forth the factors considered as aggravating or mitigating circumstances when it increases or decreases a sentence. *Bish v. State* (1981), Ind., 421 N.E.2d 608, 620. On appeal, this Court need not reweigh the trial court's findings. If the sentences imposed are authorized by statute, are not manifestly unreasonable, and are supported by a statement on the record of the aggravating and mitigating circumstances, we will not strike down the sentence. *Id.*

　■■■■　The trial court gave, as one factor, Manning's history of criminal activity and detailed at least three previous convictions. A history of criminal activity will support enhancement of a sentence, imposition of consecutive sentences, or both. *Jackson v. State* (1982), Ind.App., 441 N.E.2d 29, 33. It is not error for the trial court to use the same criteria to both enhance sentences and impose them consecutively. *Hedrick v. State* (1982), Ind., 430

N.E.2d 1150, 1157. This factor alone is sufficient to support the enhancement of Manning's sentences and the determination that they be served consecutively. Therefore, we cannot say that the sentence imposed was "manifestly unreasonable" and we need not address Manning's attack on other factors stated by the trial judge. *Cf. McNew v. State* (1979), 271 Ind. 214, 391 N.E.2d 607 (Improper consideration of one item by the sentencing judge does not necessarily render the sentence manifestly unreasonable.)

　Affirmed as to three convictions; reversed as to one conviction and remanded with orders to vacate Manning's conviction on that count.

CONOVER, P.J., by designation, concurs.

HOFFMAN, J., concurs in part and dissents in part with opinion.

HOFFMAN, Judge, concurring in part and dissenting in part.

While I concur in the majority opinion to the extent that it affirms the first three counts of receiving stolen property, I respectfully dissent to reversal of the fourth count.

The majority opinion correctly states the legal concepts in regard to the "plain view" doctrine, but misapplies the law to the evidence contained in the record. The police lawfully entered the shed under a valid search warrant. Once inside, they observed late model automobiles in various degrees of dismantlement. Cutting torches had been used to "chop" cars that appeared too new and undamaged to be in a salvage yard. The locks on several vehicles had been punched out, and steering columns were mysteriously dismantled. The officers encountered a situation clearly indicating the operation of a clandestine "chop shop," in which the true identity of stolen automobiles is transformed for the purpose of resale. The automobiles were of "readily apparent" criminality, and clearly connected to contemporaneous criminal activity. Based upon things which ap-

peared in "plain view," police gained probable cause sufficient to support a subsequent search warrant.

Additionally it should be noted that police took down vehicle identification and license numbers which later indicated that the automobiles were in fact stolen. These numbers are in plain view on all autos for the purpose of aiding identification. Under the circumstances presented here, no illegal search was conducted by police in copying and checking these numbers.

The trial court did not err in admitting evidence supporting this conviction. Accordingly, I would affirm the judgment of conviction as to all four counts of receiving stolen property.