**Gordon D. HEWELL, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1-484A108.**

Court of Appeals of Indiana, First District.

Dec. 20, 1984.

Rehearing Denied Jan. 29, 1985.

---

**4.** A "manufactured home" is defined in a later section in terms which would include a mobile home. 24 C.F.R. 3280.2(16) (1984).

John G. Bunner, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Lee Cloyd, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Gordon Hewell appeals a jury verdict finding him guilty of the crime of corrupt

business influence, a class C felony.[1] We reverse.

## FACTS

Hewell was the object of a sting operation conducted by the Vanderburgh County Prosecutor's Office in late 1982 and early 1983. In November 1982, Neil Thomas, Chief Deputy Prosecutor in Vanderburgh County, met with Danny Decker, who agreed to take part in the operation. Thomas devised a plan where Decker would offer to sell certain pieces of jewelry to the defendant, representing each item as stolen property. In exchange for his cooperation, Decker, who faced his third felony charge, would not be charged as a habitual offender.[2]

Four times in December and once in January, 1983, Decker transacted business with the defendant as planned. On December 1, the defendant paid $400 for a woman's cluster diamond ring. On December 3, Decker, this time accompanied by his girlfriend Cheryl Douglas, sold a man's cluster ring to the defendant. The next meeting took place on December 14, when Decker, again accompanied by his girlfriend, offered a bracelet to the defendant who purchased it for $225. During the last meeting in December, just before Christmas, Decker sold the defendant two bracelets and a necklace. Finally, on January 19, 1983, the defendant purchased a small ring from Decker. On each of these five occasions, Decker carried a concealed transmitter which recorded the conversation taking place during the transaction. The recordings produced, however, were of poor quality and not introduced at trial. Also, while each item of jewelry offered to the defendant was represented by Decker as stolen property, it was either lawfully purchased to be used for the sting operation or was abandoned property previously turned in to the Evansville police department.

On January 19, 1983, after the final meeting between the defendant and Decker, the police arrested the defendant. On the same day police searched the defendant's business, Gordon Sales, Inc., and his residence. The next day, the police searched a warehouse on Fulton Avenue where the defendant stored merchandise. The search was conducted pursuant to a warrant which authorized the police to search for and seize any items connected with the crime of Corrupt Business Influence. The affidavit accompanying the warrant, specifically described the items of jewelry purchased from Decker and indicated that each was evidence of attempting to receive stolen property. However, only the ring sold on January 19, 1983, was found after the three building search which spanned seventeen hours and involved 20 police officers. Besides the ring, a large number of silver items were found at the warehouse, including serving trays, bowls, pitchers, and silverware. The silver and many other items such as furs, explosives, televisions, stereos and typewriters were all seized.

Before trial, the defendant filed a motion to suppress evidence of all the items seized from the three buildings. The trial court ruled that the ring and a silver goblet found at the defendant's business together with all the silver found at the warehouse were admissible. At trial, polaroid snapshots of the silver items seized were admitted into evidence over the objection of defense counsel.

At the close of all the evidence, the jury was instructed to determine the defendant's guilt regarding each incident. The jury found the defendant guilty of attempting to receive stolen property each time he purchased jewelry from Decker. In addition, the jury found the defendant guilty of receiving stolen property based on the silver items seized from the warehouse.

## ISSUE

Because of our decision we address only one issue raised by the defendant which, restated, is as follows:

1. Indiana Code section 35–45–6–2(3).

2. Indiana Code section 35–50–2–8.

Did the trial court err by not suppressing the evidence of the silver seized by the police.

## DISCUSSION AND DECISION

■ To protect a citizen's right to be free from unreasonable searches and seizures our state and federal constitutions require officials to obtain a warrant before conducting searches and seizures. U.S. const. amend. 4; Ind. const. art. 1, § 11. A warrant may not issue unless an affidavit is submitted to a judge or magistrate, describing with particularity the place to be searched and the items to be seized. *Id.; see also* Indiana Code section 35–33–5–3. This particularity requirement restricts the scope of the search by authorizing seizure of only those things described in the warrant. *Layman v. State,* (1980) Ind.App., 407 N.E.2d 259, *trans. denied.* This is necessary because a warrant which leaves the executing officer with discretion is invalid. *Baker v. State,* (1983) Ind., 449 N.E.2d 1085. The affidavit submitted in this case particularly described only the jewelry sold to the defendant during the sting operation. Therefore, the police were not authorized by the warrant to seize the silver.

■ The state argues that the seizure of the silver items was proper under the plain view doctrine; an exception to the warrant requirement. The plain view doctrine established in *Coolidge v. New Hampshire,* (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, allows the police to seize items without a warrant if three requirements are met. First, the police officer must lawfully be in a place or position from which he can view the property seized. *Id.*

Second, the item must be discovered inadvertently during the course of a valid search. *Id.* Finally, it must be immediately apparent to the officer upon discovery that the item is evidence of a crime or contraband. *Id.; Texas v. Brown,* (1983) 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502, 510; *McReynolds v. State,* (1984) Ind., 460 N.E.2d 960, 962. We now examine the case at bar to determine if each requirement was met.

The first requirement was met because the police entered the warehouse pursuant to a valid warrant. *McReynolds.* The state also argues that it was immediately apparent that the silver was crime-related because they had probable cause to believe it was stolen. *McReynolds; cf. Brown,* 460 U.S. at 742, 103 S.Ct. at 1542 n. 7, 75 L.Ed.2d at 513. Six or seven days prior to the search, Joseph Herbert gave a statement to the police admitting that he stole some silver articles and sold them to the defendant. Assuming arguendo that the knowledge gained from the statement made it readily apparent the silver was stolen,[3] plain view still does not apply because the discovery of the silver was not inadvertent. On the contrary, we believe the police expected to recover the silver in light of Herbert's statement.

■ The requirement that the items be discovered inadvertently simply means the police may not know in advance that certain property exists in the area to be searched. *Brown,* at 743, 103 S.Ct. at 1543, 75 L.Ed.2d at 514. The rationale for this requirement is that it prevents a properly restricted search warrant from becoming a general warrant,[4] authorizing the seizure of any and all items.[5] *Coolidge,* 403

---

3. Considering the manner in which the search was conducted it appears the officers did not have probable cause to suspect the silver was stolen but had only a mere suspicion. *Manning v. State,* (1984) Ind.App., 459 N.E.2d 1207, *trans. denied.* Before seizing the silver, Joseph Herbert was summoned to the warehouse to identify the silver. This indicates that the crime-related character of the silver was not immediately apparent. *Id.*

4. General warrants are proscribed by both the United States and Indiana Constitutions. *Layman,* 407 N.E.2d at 261–62.

5. An examination of the record reveals that the search in question did, in fact, turn into a generalized search, extending far beyond the scope of the warrant issued. An officer, who participated in the search, testified at the motion to suppress hearing that every item in the warehouse which had a serial number was run through the National Crime Computer to deter-

U.S. at 469–70, 91 S.Ct. at 2040, 29 L.Ed.2d at 585. When the police conduct a search authorized by a warrant which does not mention certain items the police expect to find during the search, reliance on plain view is pretense. *Id.; Brown,* 460 U.S. at 743, 103 S.Ct. at 1543, 75 L.Ed.2d at 514; *McReynolds,* 460 N.E.2d at 962–63. Plain view does not apply to the silver seized and, because it was not mentioned in the warrant or affidavit, its seizure was unlawful.

Our next inquiry is whether the admission of the evidence at trial requires reversal of the defendant's conviction. The remedy available when evidence is illegally seized is the exclusion of the evidence from the defendant's trial. This exclusionary rule protects the defendant's right to be free from unreasonable searches and seizures under the Indiana and United States constitutions. *Mapp v. Ohio,* (1961) 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *Callender v. State,* (1923) 193 Ind. 91, 138 N.E. 817. Therefore, the trial court's error in admitting evidence regarding the silver

was of constitutional dimension. When constitutional error occurs we may affirm only if the error was harmless beyond a reasonable doubt. *Chapman v. California,* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *United States v. Posey,* (7th Cir.1981) 663 F.2d 37 *cert. denied* (1982) 455 U.S. 959, 102 S.Ct. 1473, 71 L.Ed.2d 679; *Ortez v. State,* (1975) 165 Ind.App. 678, 333 N.E.2d 838, *trans. denied* (1976). In *Candler v. State,* (1977) 266 Ind. 440, 363 N.E.2d 1233, 1240, our supreme court further defined this standard in exclusionary rule cases stating an appellate court may affirm the conviction if the evidence, which should have been excluded "made no contribution to the verdict."

We believe the evidence showing the stolen silver was found at the defendant's warehouse must have contributed to the verdict. A conviction for Corrupt Business Influence required the prosecution in this case to show the defendant either attempted to receive, or actually received, stolen goods on at least two occasions.[6]

mine if it was reported stolen anywhere in the country. This was done regardless of whether anyone had an independent basis, reasonable belief or particularized suspicion that the property was stolen. Record at 618. *See e.g., Brown,* 460 U.S. at 742, 103 S.Ct. at 1543, 75 L.Ed.2d at 514. The deputy prosecutor accompanied the police when the search was conducted and made the ultimate decision regarding what items would be seized. The police showed items to the deputy prosecutor who decided whether or not to "seize" the property and then all items taken were inventoried. Clearly, the officials conducting the search entered the buildings with the intention of seizing as many items as possible. A police officer testified that certain expensive cameras were not taken. When asked why they were not seized, the officer responded that they could not take everything because the warehouse was so full. Record at 621. We do not hold that the search was illegal because it was so broad and all-encompassing. However, we refuse to allow a search, restricted in scope by a valid warrant, to be so substantially broadened under the guise of the plain view doctrine. In *Manning,* 459 N.E.2d at 1212, the court stated:

"The facts demonstrate that the officers used their presence on the property to improperly conduct a 'general exploratory search from one object to another until something incriminating emerge[d].' *Coolidge, su-*

*pra.* Given the facts and circumstances, the officers had no more than a mere suspicion that the vehicles had been stolen, which does not justify a search beyond the scope of the warrant. [Citation omitted.]"

6. To be convicted of corrupt business influence the prosecutor must show the defendant engaged in a "pattern of racketeering activity." Indiana Code section 35–45–6–2. The statute defines pattern of racketeering activity as follows:

" 'Pattern of racketeering activity' means engaging in at least two [2] incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents; however, the incidents are a pattern of racketeering activity only if at least one of the incidents occurred after August 31, 1980, and if the last of the incidents occurred within five [5] years after a prior incident of racketeering activity.

'Racketeering activity' means to commit, to attempt to commit, or to conspire to commit a violation, or aiding and abetting in a violation, of a provision of IC 23–2–1, or of a rule or order issued under IC 23–3–1; a violation of IC 35–47; a violation of IC 35–49–3; murder (IC 35–42–1–1); battery as a class C felony (IC 35–42–2–1); kidnapping (IC 35–42–3–2);

The direct evidence that the defendant attempted to receive stolen goods consisted of the testimony from Decker and his girlfriend and the fact that the ring was found after a search of the defendant's business. The direct evidence showing the defendant actually received stolen property included Herbert's testimony and the fact that stolen silver was found in the defendant's warehouse. Both Decker and Herbert cooperated with the state because the prosecutor offered a deal regarding charges pending against them. This raises some doubt concerning the reliability of the testimony by Decker, Decker's girlfriend and Herbert. With the silver excluded the only completely reliable direct evidence was the ring. One incident involving attempted receipt of stolen property does not establish the crime of Corrupt Business Influence.[7] We must conclude that admission of evidence of the silver contributed to the conviction.

Judgment reversed and remanded for a new trial.

NEAL, P.J., and ROBERTSON, J., concur.

---

child exploitation (IC 35–42–4–4); robbery (IC 35–42–5–1); arson (IC 35–43–1–1); burglary (IC 35–43–2–1); theft (IC 35–43–4–2); *receiving stolen property* (IC 35–43–4–2); forgery (IC 35–43–5–2); fraud (IC 35–43–5–4); bribery (IC 35–44–1–1); official misconduct (IC 35–44–1–2); conflict of interest (IC 35–44–1–3); perjury (IC 35–44–2–1); tampering (IC 35–44–3–4); intimidation (IC 35–45–2–1); promoting prostitution (IC 35–45–4–4); promoting professional gambling (IC 35–45–5–4); dealing in cocaine or a narcotic drug (IC 35–48–4–1); dealing a a schedule I, II, or III controlled substance (IC 35–48–4–2); dealing in a schedule IV controlled substance (IC 35–48–4–3); dealing in a schedule V controlled substance (IC 35–48–4–4); or dealing in marijuana, hash oil, or hashish (IC 35–48–4–10. [Emphasis supplied.]"
Indiana Code section 35–45–6–1.

7. We assume only for the sake of argument that the conviction for attempted receipt of stolen property was proper. The defendant argues in his brief that because the property purchased during the sting operation was not stolen, it was improper to find him guilty of attempted receipt of stolen property. Due to our decision we express no opinion on this issue. For a discussion of the problems raised by this issue see *King v. State,* (1984) Ind.App., 469 N.E.2d 1201, Conover, J., dissenting.