**Joseph SOLOMON,**
**Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9006–CR–339.[1]

Court of Appeals of Indiana,
Fifth District.

May 6, 1991.

---

**1.** This case has been diverted to this office by order of the Chief Judge.

S. Sargent Visher, Choate, Visher & Haith, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BARTEAU, Judge.

A jury convicted Joseph Solomon of attempted murder, resisting law enforcement, and criminal mischief. Solomon appeals, arguing that:

(1) his conviction for attempted murder was not supported by sufficient evidence;

(2) the trial court erred by denying Solomon's motion for mistrial after the prosecutor mentioned during jury selection a defendant's right to remain silent; and

(3) the use of transparent overlays on a drawing of city streets created fundamental error by precluding appellate review.

We affirm.

### FACTS

During the evening of September 2, 1989, a motorist collided with several cars parked along North Byram Street in Indianapolis. A crowd gathered, apprehended the errant driver, and detained him pending the arrival of authorities. Police Officer Nagy was first on the scene, followed closely by Officer Conway. Both were in uniform.

Nagy and Conway were carrying out their duties relative to the above incident when they heard a car travelling rapidly southbound on the alley parallel to North Byram. When that car came to the alley's end at the cross street, West Bernard, it turned right, heading toward North Byram on West Bernard. When the car first entered West Bernard, it accelerated and veered towards Conway, who had to leap aside to avoid being hit. The car then turned right onto North Byram, went a short distance and stopped, its path blocked by wreckage from the hit-and-run.

It was a tense moment, according to Nagy, who was standing near the wreckage blocking North Byram. By the time the car stopped on North Byram, Nagy had drawn his revolver, was pointing it at the oncoming vehicle, and yelling for the driver to stop. In the instant the car stopped, Conway was approaching it from the south. He had a good look at the driver, who was staring back at him, and whom Conway recognized and knew by the nickname "Little Joe." At trial, both Conway and Nagy identified Solomon as the wayward driver.

Solomon then put his car in reverse and accelerated directly at Conway, who tried to step aside. But, Conway tripped on a curb and fell. Fortunately, he was able to roll away from the path of Solomon's car, the right rear tire of which hit the same curb. It was a close call—Nagy testified that he initially thought Conway had been hit by the car.

After accelerating in reverse on North Byram, Solomon backtracked. He re-entered West Bernard, heading east in forward gear. He re-entered the alley from whence he came, now heading north. Nagy and Conway gave chase in their cruisers. Solomon's car came to rest in the next block, after crashing into several buildings. He escaped on foot.

About six hours later, Conway arrested Solomon, whose hiding place in a house in the same neighborhood was revealed by an anonymous informant. Conway told Solomon that he was under arrest for the attempted murder of a police officer. Solomon asked "who," Conway replied "me," and Solomon stated "oh, you're the one."

## SUFFICIENCY OF THE EVIDENCE

Count I of the charging information alleged Solomon attempted to murder Conway by "knowingly operating a motor vehicle, on two successive occasions, at and toward [Officer] Conway." Record at 2. Solomon argues that the evidence on this charge was insufficient in two ways. He contends first, there was insufficient evidence to prove he acted knowingly, and second, the State failed to show two acts of operating a motor vehicle at Conway.

When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider only the evidence most favorable to the verdict, and any inferences reasonably drawn therefrom. We will affirm a verdict supported by substantial evidence of probative value. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *reh'g denied, cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

In *Johnson v. State* (1983), Ind., 455 N.E.2d 932, *reh'g denied,* a case factually similar to this one, our supreme court discussed the proof of attempted murder:

> The crime of attempt has two elements: acting with a specific intent to commit the substantive crime and taking a substantial step toward its commission. This Court has held that to prove the requisite intent for attempted murder, the State must prove the intent needed to support a murder charge. This intent may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm.

*Id.* at 936 (citations omitted).

The statutory definition of murder includes acts committed "knowingly," as Solomon was charged. Ind.Code 35-42-1-1. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code 35-41-2-2(b). In the absence of an admission, a defendant's state of mind necessarily "must be determined ... from a consideration of the defendant's conduct and the natural and usual consequences of such conduct." *Metzler v. State* (1989), Ind., 540 N.E.2d 606, 609. Such consideration includes the idea from *Johnson* that state of mind may be inferred from the dangerous use of a deadly weapon. *Johnson* and *Metzler* make clear that an automobile can be a deadly weapon, the instrument for murder or attempted murder.

We conclude the evidence was sufficient on every element of attempted murder, based on the eyewitness accounts of Officers Nagy and Conway, outlined above.

Their testimony provided substantial evidence of probative value from which the jury could have reasonably decided that Solomon twice drove his car at Conway, and from which the jury could have reasonably inferred that Solomon was aware of a high probability that the natural and probable consequences of his driving would be the death of Conway.

### DENIAL OF MISTRIAL

During jury selection, the following dialog occurred:

[Prosecutor]: Okay. So even though you've got a police officer, obviously, in your family, you would be fair to the defendant and listen to everything?

[Venireman]: Sure. I don't want, it wouldn't do any good to convict him just for that.

[Prosecutor]: Right. Because as he sits here today, he's presumed innocent. You know, by law he has the presumption of innocence, so until all the evidence is in, he's presumed innocent. It's only after you hear the evidence that you make the determination whether he is or not, and that burden, you know, I said before, is on the State, because we are the ones, you know, essentially pointing the finger and saying, he did this, this, and this, so it's my duty to show you that he did do all that, and he doesn't have to do anything if he so chooses. He can sit there and be silent and not produce any witnesses.

Record at 137–38.

Solomon moved for a mistrial, arguing the "sit there and be silent" statement impermissibly infringed his privilege against self-incrimination. The trial judge denied the motion.

■ A motion for mistrial is a matter of trial court discretion. It should be granted when a defendant has been improperly placed in a position of grave peril and no other remedy is available. A trial judge's ruling on a motion for mistrial is reviewed for abuse of discretion only. *Poling v. State* (1987), Ind., 515 N.E.2d 1074, *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1646, 104 L.Ed.2d 161.

■ "Comment by the court or prosecutor upon the defendant's refusal to testify is a vestige of the inquisitional system of justice which the Fifth Amendment outlaws." *Williams v. State* (1981), Ind., 426 N.E.2d 662, 666, *reh'g denied* (citing *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106). Error occurs when statements by the court or prosecutor invite the jury to infer evidence of guilt from a defendant's decision to not take the witness stand. *See Manning v. State* (1984), Ind.App., 459 N.E.2d 1207, *reh'g denied, trans. denied.* Comment during jury selection on the defendant's right to not testify presses the defendant to testify, thereby contaminating the defendant's privilege. The privilege is similarly assailed by comment during closing argument, where such comment might lead the jury to infer guilt from the defendant's failure to personally deny the charges.

■ Ideally, a prosecutor should avoid any mention of the defendant's potential or completed exercise of the right to not testify. However, deviation from the ideal is not necessarily error. A statement that "simply sets out for the jury the procedure which the trial may follow" is permissible provided it does not also imply to the jury that the defendant's silence at trial evidences guilt. *Id.* at 1213.

■ In *Parsons v. State* (1985), Ind., 472 N.E.2d 915, *cert. denied,* 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857, the prosecutor during jury selection told a prospective juror that in a rape case there are usually two eyewitnesses, then asked whether the prospective juror would be upset if one of the two eyewitnesses did not testify. Our supreme court deemed the statement proper. Because the prosecutor's speech in *Parsons* skirted much closer than the prosecutor's statement here to the prohibited disparagement of a defendant's privilege, we hold that the statement was not an improper comment on Solomon's right to not testify. Rather, it merely informed the venire of trial procedure—that the burden of proof rests entirely on the State, and a defendant is entitled to refrain from both

presenting witnesses or testifying—without suggesting in any way that the jury could draw an inference of guilt if the trial ended without testimony by Solomon. The prosecutor's statement might reasonably have been made by the defense. *See Bernard v. State* (1989), Ind., 540 N.E.2d 23; *Burdine v. State* (1987), Ind., 515 N.E.2d 1085, *reh'g denied.* Moreover, the jury received a preliminary instruction forbidding their drawing any inference from the defendant's failure to testify. Under these circumstances, we cannot say that the prosecutor's statement improperly placed Solomon in a position of grave peril. Therefore, the court did not abuse its discretion in denying Solomon's motion for mistrial.

## USE OF OVERLAYS

Not-to-scale drawings of the city streets where the events took place were used by witnesses from both sides to help explain their testimony. In addition, both sides placed over the drawings transparent sheets, on which witnesses drew a variety of symbols and arrows to explain the location of objects and the movements of people and automobiles. These transparent overlays were admitted into evidence, without objection, then photographed and included in the record on appeal. Solomon claims admission of the overlays amounts to fundamental error that preserves the question for our review despite his failure to object at trial.

The purported fundamental error exists in that "we cannot know what the exhibits told the jury because we cannot make sense from the photographs in the record of the testimony of the witnesses, working before the jury with a map and a series of overlays upon which squiggles, lines, arrows and Xs were made, all in an effort to illustrate the testimony." Appellant's Brief at 24. Therefore, concludes Solomon, it was reversible error to admit the overlays into evidence because their nature precludes appellate review of the sufficiency of the evidence.

We agree with Solomon's argument that these overlays are not susceptible to appellate review. The photographs in the record show that overlays themselves lack communicable content. They convey information only in conjunction with, and contemporaneously to, the testimony of witnesses.[2]

However, we disagree with Solomon that the shortcoming of the overlay technique amounts to fundamental error. "In order to rise to the level of fundamental error the error must constitute a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively." *Reynolds v. State* (1984), Ind., 460 N.E.2d 506, 508, *reh'g denied,* 463 N.E.2d 1087. The trial technique of having witnesses make marks on a transparency laid over an outline of city streets, to help the jury understand the testimony, simply does not rise to that level. .

Indeed, even if Solomon had objected at trial to the overlays, thereby preserving the issue for appeal in the ordinary fashion, we would likely conclude that there was no error at all. Charts and drawings may be admitted into evidence if they are reasonably accurate and likely to help a jury understand testimony; such exhibits need not be perfect representations, and their admissibility is a matter of trial judge discretion. *Owensby v. State* (1984), Ind., 467 N.E.2d 702, 709; *see also* R. Miller, *Indiana Evidence*, § 611.107, and cases cited therein. We see no reason to create an exception for overlays. The independent expressiveness lacking in overlays, the basis on which Solomon urges reversible error, can be equally absent in charts and drawings. A drawing of a crime scene on which witnesses have drawn a variety of symbols or pointed to specific locations is no more amenable to appellate review than a similarly-used over-

---

**2.** The parties have argued about the applicability of Appellate Rule 7.2, which dictates the form and content of the record on appeal. Whether the actual overlays might have been made part of the record is of no moment, because even if they were before us, we would learn nothing from them.

lay. Yet, there is no ban on such drawings. Accordingly, we see no reason to condemn overlays.

Admission of the overlays was not fundamental error. Therefore, we hold that Solomon waived the issue by not objecting at trial.

AFFIRMED.

SHARPNACK and GARRARD, JJ., concur.