# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JAMES C. SPENCER**
Dattilo Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THOMAS MACK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 39A01-1401-CR-6 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JEFFERSON SUPERIOR COURT
The Honorable Alison T. Frazier, Judge
Cause No. 39D01-1303-FB-236

**December 18, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Thomas Mack appeals his convictions for possession of a firearm by a serious violent felon, as a Class B felony; forgery, as a Class C felony; maintaining a common nuisance, as a Class D felony; and possession of marijuana, as a Class A misdemeanor; following a jury trial. Mack raises numerous issues for our review, which we consolidate and restate as the following two issues:

1. Whether the trial court abused its discretion when it admitted certain evidence; and

2. Whether the State presented sufficient evidence to support his convictions.

Among other things, we hold that, in light of the facts and circumstances of this case, a lapse of at least "a few minutes" between a declarant's perception of an event and his statement describing that event was too long to qualify the statement as a present sense impression under Indiana Evidence Rule 803(1). We also hold that the admission of this hearsay violated Mack's right to confront the declarant. Nonetheless, these errors were harmless beyond a reasonable doubt. As such, on these and all other issues, we affirm Mack's convictions.

## FACTS AND PROCEDURAL HISTORY

On February 18, 2013, Madison Police Department Officer Kurtis Wallace responded to a report of a counterfeit $100 bill having been used at a Murphy's USA gas station. Upon arriving at the gas station, the clerk handed the counterfeit bill to Officer Wallace and informed Officer Wallace that he had received the bill from the occupant of a vehicle in the parking lot. Officer Wallace approached the occupant of that vehicle,

2

Darren Stewart. Stewart admitted that the bill was counterfeit and stated that it had originated with Mack.

Later that evening, Stewart agreed to approach Mack while wearing a recording device and transmitter. Stewart then led Officer Wallace and Officer Jonathan Simpson to 3587 Woodside Drive, a home owned by Audriana Ashby. Stewart then entered the residence while wearing his recording device and transmitter. Among other voices they could hear, the officers recognized Mack's voice inside the residence. After about ten minutes, Stewart exited the residence. The officers then drove Stewart around the block and returned him to the residence, and he again went inside. After another ten minutes, Stewart again exited the residence.

According to the statements heard by the officers while Stewart was inside the residence, Mack discussed "cutting open a light bulb," which the officers recognized as a means of ingesting methamphetamine. Tr. at 212. And "a few minutes" after Stewart had returned to the officers the second time, he informed Officer Simpson that in another conversation inside the residence Mack had discussed buying degreaser, which can be used by a counterfeiter to "bleach" a low-denomination bill such that the counterfeiter is left with genuine currency paper, including the watermark and security thread. Id. at 210, 213, 324-25. The counterfeiter can then use "any standard 3-in-1 printer" to print a larger-denomination bill on the currency paper. Id. at 325. The counterfeit $100 bill discovered at the gas station had been created from a $5 bill using this method. Stewart also informed the officers that he had observed a glass pipe inside the residence, which the officers recognized as a device used for smoking methamphetamine.

At the time of the officers' investigation, Mack was on parole. Officer Wallace thus contacted Erika Smith, Mack's parole officer, and informed her of the investigation. Pursuant to the terms of his parole, Mack was obligated to keep Officer Smith informed of his residence. But Mack had informed Officer Smith that he was living at 623 Aulenbach Avenue. And, in recent meetings with Mack, Officer Smith learned that Ashby was his girlfriend, and that Ashby had a young son. After receiving Officer Wallace's report, Officer Smith twice went to Mack's supposed residence on Aulenbach Avenue but did not find him there. Noel Mack, Mack's brother who also lived at that address, informed Officer Smith that Mack only "crashes here sometimes," and Noel then directed her to an address on Woodside Drive that was not Ashby's address. Id. at 234, 501.

Officer Smith went to the address Noel had provided but did not observe Mack or Mack's vehicle. The next day, on March 1, Officer Smith returned to the address provided by Noel with her supervisor, Officer Ryan Harrison, but she again did not observe Mack or his vehicle. Upon leaving that address, however, Officer Smith did observe Mack's vehicle and Ashby's vehicle at a nearby residence, 3587 Woodside Drive.

The officers approached the front door of that residence, and Officer Smith heard a "loud voice," which she recognized as Mack's, and "quick steps like running." Id. at 241. The officers knocked on the door and announced their presence, but they did not get an immediate response. Eventually, Mack opened the front door "maybe a foot" but

would not allow the officers in because "it wasn't his house." Id. at 243. Ashby arrived at the front door some time thereafter and permitted the officers to enter the residence.

Once inside, Officer Smith backed up towards the front door and bumped into a rifle, which had been propped up near the door jamb. Mack stated that the firearm was "a toy." Id. at 601. The officers asked if there were any other weapons in the residence, and Ashby pulled a .22 caliber long rifle out of the entertainment center. Ashby claimed the firearms were hers, and she placed the firearms and some ammunition in an outdoor shed. Afterwards, Officer Smith informed Officer Wallace of the encounter.

On March 4 and March 6, Officer Wallace drove past 3587 Woodside Drive and observed Mack's vehicle at that address. On March 7, Officer Wallace executed an affidavit in support of a no-knock search warrant at that address. Officer Wallace explained that Mack was not at his parole-approved residence, that Mack had a prior conviction for a serious violent felony,[1] and that, at the Woodside Drive residence, Officer Smith and Officer Harrison had observed firearms. Thus, Officer Wallace requested a search warrant to search for any firearms at that residence along with any evidence that would establish ownership over such firearms. And because the facts recited in the affidavit suggested a serious violent felon in possession of firearms, contrary to Indiana law, Officer Wallace requested that the search warrant be a no-knock warrant. The trial court authorized a no-knock search warrant later that day.

During the ensuing search of the residence, officers seized several firearms and ammunition, various drug paraphernalia used to ingest methamphetamine and marijuana,

---

[1] Although not specified in the affidavit and not clearly specified elsewhere in the record, Mack's prior conviction was for battery by means of a deadly weapon, as either a Class A, B, or C felony.

a cutting agent used with methamphetamine, and marijuana. The officers further seized male clothing from the adult bedroom and the front porch, along with Mack's deodorant, shower gel, and beard trimmer from the bathroom.

In a closet in the adult bedroom, the officers found a .22 caliber rifle. Under that rifle, the officers discovered a trap door. Under the trap door, officers found a 3-in-1 printer and a photocopy of a $100 bill on a sheet of paper, both of which were inside a red bag. Also in the red bag were various letters addressed to Mack and a photograph of Mack's adult daughter and her family. Following his arrest, Mack referred to Ashby's residence as "my house" in a phone call with Ashby from jail. State's Ex. 39 at 5.

The State charged Mack with possession of a firearm by a serious violent felon, as a Class B felony; forgery, as a Class C felony; possession of methamphetamine, as a Class D felony; maintaining a common nuisance, as a Class D felony; and possession of marijuana, as a Class A misdemeanor. Prior to trial, the trial court excluded Stewart as a witness,[2] but, at trial and over Mack's objection, the court permitted the State to present the audio recordings obtained with Stewart's assistance on February 18 as well as Officer Simpson's recollection of Stewart's statements during that investigation. The court also permitted the State to introduce, over Mack's objection, the evidence seized pursuant to the search warrant. And the court permitted, again, over Mack's objection, Officer Smith to testify that she had met with Mack prior to February 18, but the court did not permit her to identify herself as a parole officer or to identify Mack as a parolee.

---

[2] Stewart had invoked his Fifth Amendment right against self-incrimination.

After a bifurcated trial, the jury found Mack not guilty of possession of methamphetamine but guilty on the other counts. The court entered its judgment of conviction accordingly and sentenced Mack to an aggregate term of twenty-four years. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One:  Admission of Evidence

We first address Mack's several arguments regarding the admission of evidence. Our standard of review of a trial court's admission of evidence is an abuse of discretion. Speybroeck v. State, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007). A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court misapplies the law. See id. Here, Mack asserts that the trial court abused its discretion when it admitted the following evidence: (1) all evidence seized pursuant to the search warrant; (2) Stewart's statements during the February 18 investigation; and (3) Officer Smith's testimony that she had met with Mack prior to execution of the search warrant. We address each argument in turn.

### Evidence Seized Pursuant to the Search Warrant[3]

We first address Mack's argument that the trial court abused its discretion when it admitted the items seized pursuant to the search warrant. In particular, Mack asserts: (A) the probable cause affidavit was false and misleading; (B) the ensuing search was overbroad; and (C) the trial court erred in issuing a no-knock warrant. We do not agree with any of these assertions.

---

[3] Mack does not separately analyze any of these arguments under Article 1, Section 11 of the Indiana Constitution. As such, any intended argument under that provision is waived. Ind. Appellate Rule 46(A)(8)(a).

7

A.  Whether the Probable Cause Affidavit was False and Misleading

The probable cause affidavit was not false and misleading.  As we have recognized:

> If a defendant establishes by a preponderance of the evidence that "a false statement knowingly and intentionally, or with a reckless disregard for the truth, was included by the affiant in the warrant affidavit, . . . and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

Stephenson v. State, 796 N.E.2d 811, 815 (Ind. Ct. App. 2003) (quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978)) (omission original to Stephenson), trans. denied.

Mack takes issue with Officer Wallace's statement in the affidavit that Mack was "believed to be living" at the Woodside Drive address.  Appellant's Br. at 16.  According to Mack, "[t]his statement was made despite the fact that no surveillance had been done to determine whether Mack was living there" and even though "Mack's registered address for parole was 623 Aulenbach."  Id.  But Mack's brother Noel had informed Officer Smith that Mack only "crashes here sometimes" in reference to the 623 Aulenbach Avenue address, and Noel then directed her to an address on Woodside Drive. Tr. at 234.  And officers repeatedly observed Mack's vehicle outside Ashby's address on Woodside Drive prior to their application for a search warrant.  As such, this argument is without merit.

Mack also complains that the probable cause affidavit states that his parole-approved address was on Chauncey Lane rather than Aulenbach Avenue.  But nothing

8

about this apparent clerical error could have affected the magistrate's decision regarding whether to issue the warrant. Thus, this argument is baseless.

Next, Mack asserts:

> Conveniently omitted from the application for search warrant were the facts that the[] weapons [observed by Officers Harrison and Smith] were voluntarily secured in an outside shed by Ashby the week before when parole agents were there, that there was no evidence Mack had ever handled the weapons, and that Ashby claimed ownership of the two weapons which were in the shed at the time the application for a search warrant was made.

Appellant's Br. at 17. But even if all of this information had been included in the affidavit, these facts would not have negated a legitimate finding of probable cause on the grounds that Mack actually or constructively possessed firearms as a serious violent felon. As such, the probable cause affidavit was not false and misleading.

## B. Whether the Search was Overbroad

Mack also asserts that the officers' search was overbroad. In particular, Mack argues that the officers seized evidence other than the firearms authorized by the search warrant, namely, drugs, paraphernalia, and evidence related to forgery, which the officers knew before they sought the warrant they might find. In support of this position, Mack relies on Hewell v. State, 471 N.E.2d 1235, 1238 (Ind. Ct. App. 1984), trans. denied. In Hewell, we held that the plain view doctrine, which permits officers to seize contraband the officers discover while executing a search warrant for other contraband, did not justify the seizure of evidence the officers had originally expected to find but did not include in their application for a search warrant. Id. Specifically, Hewell relied on the following statement of law:

9

The requirement [under the plain view doctrine] that the items be discovered inadvertently . . . means the police may not know in advance that certain property exists in the area to be searched. . . . When the police conduct a search authorized by a warrant which does not mention certain items the police expect to find during the search, reliance on plain view is pretense.

Id. at 1238-39.

But we have since recognized that this premise underlying Hewell is no longer valid under the Fourth Amendment.[4] As we have explained:

The standard for meeting the "plain view" test has traditionally required not only that the officer is in a place where he is entitled to be, but also that the discovery is inadvertent. Coolidge v. New Hampshire (1971) 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564. However, the inadvertence facet of the test appears to have been abrogated, at least insofar as United States Constitution Fourth Amendment considerations are involved. Horton v. California (1990) 496 U.S. 128, 110 S. Ct. 2301, 110 L. Ed. 2d 112; 1 Hall, Search and Seizure § 9.5 (2d ed. 1991).

Wood v. State, 592 N.E.2d 740, 742 (Ind. Ct. App. 1992). Thus, so long as the investigation for the illegal possession of firearms "was legitimate and not merely subterfuge," that officers may have suspected additional contraband on the premises "does not destroy application of the 'plain view' doctrine." Id. Accordingly, Mack's reliance on Hewell is not persuasive.

To seize evidence in plain view and not identified in a warrant, the initial intrusion must have been authorized under the Fourth Amendment, the items must have been in plain view, and the incriminating nature of the evidence must be immediately apparent. Jones v. State, 783 N.E.2d 1132, 1137 (Ind. 2003). Mack does not dispute that the

---

[4] Even if Hewell were still good law, it is readily distinguishable. Unlike here, the incriminating nature of the additionally seized evidence in Hewell was not readily apparent. See Maynard v. State, 508 N.E.2d 1346, 1353-54 (Ind. Ct. App. 1987) (distinguishing Hewell on the grounds that the evidence seized "which was not listed in [the] warrant . . . was not readily apparent to be contraband . . . ."), trans. denied.

seizure of the nonfirearm evidence satisfies each of those conditions. Moreover, because the officers discovered the nonfirearm evidence in places where they may have reasonably expected to find firearms, the officers did not exceed the scope of the search warrant. See, e.g., Green v. State, 676 N.E.2d 755, 758 (Ind. Ct. App. 1996) (quoting United States v. Ross, 456 U.S. 798, 820-21 (1982)).

## C. The No-Knock Warrant

Mack's last argument under the search warrant is that the trial court erred when it issued a no-knock search warrant. Mack's argument here is premised on his assessment that Officer Wallace subjectively favored no-knock warrants.[5] But Officer Wallace's subjective beliefs are irrelevant. Rather, to determine whether a no-knock entry is justified we assess whether the entry is objectively reasonable. Richards v. Wisconsin, 520 U.S. 385, 394 (1997). It was so here because the facts before the officers demonstrated a possible serious violent felon in possession of firearms. Moreover, Mack had not reported to his parole officer that he was staying at Ashby's residence, and, in a visit to Ashby's residence shortly before the application for the warrant, Officer Smith observed that Mack was acting in a nervous manner in response to her presence. In light of these circumstances, we cannot say that the issuance of a no-knock warrant was unreasonable. See, e.g., id. ("In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous . . . ."). And, in any event, even if the no-knock entry were unreasonable the United States Supreme Court has held that no-knock violations do

---

[5] Insofar as Mack reiterates his concerns regarding facts known to the officers but not stated in the probable cause affidavit, for the reasons stated above those concerns would not have precluded the issuance of a no-knock warrant.

not invoke relief under the federal exclusionary rule. Hudson v. Michigan, 547 U.S. 586, 594, 599 (2006). The trial court did not abuse its discretion when it admitted the evidence seized during the execution of the search warrant.

Stewart's Statements

We next address Mack's argument that the trial court abused its discretion when it admitted evidence of Stewart's statements even though Stewart was not a witness. For clarity, we separate Mack's several arguments on this issue into the following components: (A) whether Stewart's statements in the February 18 audio recordings were hearsay and violated Mack's Sixth Amendment right to confront Stewart;[6] (B) whether Stewart's statements to Officer Simpson were inadmissible hearsay; (C) whether Officer Simpson's testimony regarding Stewart's statements to him violated Mack's right to confront Stewart; and (D) whether the erroneous admission of Stewart's statements to Officer Simpson was harmless beyond a reasonable doubt.

Relevant to each of these questions is Indiana Evidence Rule 801(c), which defines hearsay as an out-of-court statement offered into evidence to prove the truth of the matter asserted. And Rule 802 provides that hearsay is generally not admissible. Also relevant is the federal constitutional right under the Sixth Amendment to confront and cross-examine witnesses. As the Supreme Court of the United States has held, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford v. Washington, 541 U.S. 36, 68-69 (2004). Out-of-court,

---

[6] We disagree with the State's assertion that Mack failed to make a proper objection to the trial court and preserve for our review his arguments under the Confrontation Clause.

testimonial statements are admissible at trial only if the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant. Id. at 59. With these principles in mind, we turn to Mack's arguments regarding Stewart's statements.

A. Stewart's Statements in the Audio Recordings.

We first address Mack's argument that Stewart's statements in the audio recordings were inadmissible hearsay and violated Mack's confrontation rights. As we have explained:

> Recently, this court held that a [confidential informant's, or C.I.'s,] statements recorded in the course of a controlled drug buy were not offered by the State to prove the truth of the matter asserted and, therefore, were "not hearsay." Lehman v. State, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), [trans. denied.] Specifically, this court, relying on a pre-Crawford decision of the Indiana Supreme Court, held that the C.I.'s statements were not hearsay because they "were largely designed to prompt [the defendant] to speak and[,] as such, it was the statements made by [the defendant] that really constituted the evidentiary weight of the conversation." Id. (discussing Williams v. State, 669 N.E.2d 956, 957-58 (Ind. 1996)). . . .
>
> We agree with the lead opinion in Lehman that the C.I.'s recorded statements during the two controlled drug buys were not offered by the State to prove the truth of the C.I.'s statements. In the case relied on by this court, our Supreme Court discussed a similar factual scenario as follows:
>
>> [The defendant] contends the trial court erred by admitting two tapes of conversations [he] had with a police informant who died before [the defendant's] trial. These conversations were recorded at [the defendant's] residence through the use of a body microphone. In each, [the defendant] told the informant about his involvement in the crime, mentioning among other things that [his co-conspirator] still owed him some drugs as payment for his help.
>>
>> [The defendant] claims that the statements and questions made by the informant were hearsay and that the admission of those statements violated his Sixth Amendment

13

right to confrontation. It is apparent, however, that the informant's contributions to the conversation were not admitted for the truth of the matters asserted. Indeed, the informant's statements were largely designed to prompt [the defendant] himself to speak. It was the statements made by [the defendant] that really constituted the evidentiary weight of the conversation. We are satisfied, as the State argues, that the informant's statements were not hearsay. That being so, [the defendant's] claims under the Fifth Amendment and under Art. I, sec. 13 of the Indiana Constitution also fail.

Williams, 669 N.E.2d at 957-58 (emphasis added; footnotes omitted).

While our Supreme Court's decision in Williams and the lead opinion in Lehman limited their discussions to Indiana evidentiary law, nonetheless the conclusions that the statements are nonhearsay have a constitutional dimension. Again, the Confrontation Clause does not apply to nonhearsay statements, even if those statements are testimonial. See Crawford, 541 U.S. at 59 n. 9, 124 S. Ct. 1354. Here, as in Williams and Lehman, the C.I.'s recorded statements during the controlled drug buys were nonhearsay because those statements merely provided context for Williams's own recorded statements . . . . "Statements providing context for other admissible statements are not hearsay because they are not offered for their truth." United States v. Tolliver, 454 F.3d 660, 666 (7th Cir. 2006), cert. denied, 549 U.S. 1149, 127 S. Ct. 1019, 166 L. Ed. 2d 768 (2007).

Williams v. State, 930 N.E.2d 602, 608-09 (Ind. Ct. App. 2010) (footnote omitted; some alterations original), trans. denied. There is no dispute that Stewart was unavailable to testify at Mack's trial and that Mack did not have a prior opportunity to cross examine Stewart. But, here, for the same reasons explained in Williams, Stewart's statements in the February 18 audio recordings are not hearsay. As such, Mack's Sixth Amendment right to confront Stewart was not implicated by these statements.

14

B. Whether Stewart's Statements to
Officer Simpson were Inadmissible Hearsay

Mack also argues that the trial court abused its discretion when it permitted Officer Simpson to testify as to what Stewart had told him when Stewart returned to the investigating officers' vehicle after exiting Ashby's residence. We need only consider one aspect of Officer Simpson's testimony on appeal: whether the trial court abused its discretion when it permitted Officer Simpson to testify that Stewart had told him that Mack had discussed buying degreaser.[7] We agree with Mack that the admission of this evidence was erroneous.

The parties do not dispute that Officer Simpson's testimony contained hearsay;[8] rather, the parties dispute only whether Stewart's statements to Officer Simpson fall within an exception to the general rule that hearsay is not admissible, namely, the exception for present sense impressions. The exception for present sense impressions permits "[a] statement describing or explaining an event, condition or transaction, made while or immediately after the declarant perceived it." Ind. Evidence Rule 803(1). On appeal, Mack argues that Stewart's statements to Officer Simpson were not made "immediately after" his perception of Mack's statements and, therefore, Stewart's

---

[7] Stewart also told Officer Simpson that Stewart had observed a glass pipe inside the residence and that Mack had discussed cutting open a light bulb with a razor blade. But the testimony regarding the pipe is cumulative to, and insignificant in light of, the evidence seized under the warrant. Likewise, Stewart's statements regarding the light bulb are cumulative to, and insignificant in light of, Mack's own clearly made statements on the audio recording. As our supreme court has recognized, the improper admission of evidence that is both cumulative and insignificant is harmless error. See Koenig v. State, 933 N.E.2d 1271, 1273 (Ind. 2010) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)). However, Mack's statements regarding the degreaser are not clearly audible in the February 18 recordings, and no degreaser was actually seized during the later search of Ashby's residence. Accordingly, we address the admissibility of those statements.

[8] To be sure, the original out-of-court statements were made by Mack, but as a party opponent his statements are not hearsay. Ind. Evidence Rule 801(d)(2).

statements do not demonstrate a present sense impression. Reply Br. at 15. According to Officer Simpson, Stewart's statements were made "a few minutes" after Stewart exited the residence. Tr. at 210. Further, Stewart was inside the residence for about ten minutes, and it is not clear at what point Stewart heard Mack's statements while inside the residence.

We must agree with Mack that Stewart's statements do not fall within the hearsay exception for present sense impressions. We first note that neither side cites factually analogous Indiana authority or foreign authority in support of their respective positions on this issue.[9] Nonetheless, the Rule 803(1) requirement that a statement be made "immediately" after the declarant's perception "is based on the assumption that the lack of time for deliberation provides reliability." 13 Robert Lowell Miller, Jr., Ind. Prac. Ser. § 803.101 at 802 (3d ed. 2007). Here, "a few minutes," and certainly "a few minutes" plus up to ten more minutes, Tr. at 210, is ample time for a declarant to deliberate and possibly fabricate a statement, especially where the declarant knows officers are looking for evidence of a particular type of crime and the declarant himself has been implicated in the commission of that crime. Thus, we hold that the trial court abused its discretion when it permitted Officer Simpson to testify to Stewart's statements regarding whether Mack had discussed buying degreaser.

---

[9] The only case cited by the State can be readily distinguished. In Amos v. State, 896 N.E.2d 1163, 1169 (Ind. Ct. App. 2008), trans. denied, we stated that the declarant's statements regarding what the defendant had told her "were made immediately after" the declarant had perceived the defendant's statements. It is clear that, in Amos, there was no delay between the defendant's statements and the declarant's recitation of those statements, let alone a delay of a few minutes or more.

16

### C. Whether Officer Simpson's Testimony
### Violated Mack's Right to Confront Stewart

Mack next asserts that Officer Simpson's testimony regarding Stewart's statements violated Mack's right to confront Stewart. We must agree. The Confrontation Clause applies to testimonial hearsay. Williams, 930 N.E.2d at 607-08. Again, there is no dispute that Stewart's statements were hearsay.[10]

We thus turn to whether Stewart's statements were testimonial. "'Testimonial' statements are, among other things . . . 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Id. at 607 (quoting Jackson v. State, 891 N.E.2d 657, 659 (Ind. Ct. App. 2008), trans. denied). To determine whether a statement made to police is testimonial, we look to the primary purpose of the conversation between the police and the declarant. Lane v. State, 997 N.E.2d 83, 92 (Ind. Ct. App. 2013), trans. denied. If the circumstances objectively indicate that the primary purpose of the conversation was to gather evidence of past events potentially relevant to a later criminal prosecution, the statements are testimonial. Id.

Stewart's statements to Officer Simpson were testimonial. His statements were made to a police officer in the course of an official investigation in which Stewart was a participant. An objective witness would reasonably have believed that the purpose of the statements was to gather evidence of past events potentially relevant to a later criminal

---

[10] It is irrelevant to our Confrontation Clause analysis whether the hearsay was admissible or inadmissible under Indiana's Evidence Rules. Again, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford, 541 U.S. at 68-69.

prosecution of Mack. As such, the statements were testimonial, and the admission of this evidence violated Mack's federal confrontation rights.

### D. Whether the Error Was Harmless Beyond a Reasonable Doubt

Because Mack has demonstrated an error involving a constitutional right, the burden shifts to the State to demonstrate that the error is harmless beyond a reasonable doubt.[11] See Brecht v. Abrahamson, 507 U.S. 619, 630 (1993). Our analysis for such questions requires this court to assess "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Chapman v. California, 386 U.S. 18, 23 (1967) (quotations omitted); see Koenig v. State, 933 N.E.2d 1271, 1273-74 (Ind. 2010). That is, we consider whether the jury would have found Mack guilty without the improper evidence. See Moore v. State, 669 N.E.2d 733, 736 (Ind. 1996). To show that Mack committed forgery, as a Class C felony, the State was required to show that Mack, with intent to defraud, made, uttered, or possessed a written instrument "in such a manner that it was purported to have been made: (1) by another person; (2) at another time; (3) with different provisions; or (4) by authority of one who did not give authority." Ind. Code § 35-43-5-2(b) (2012).

Omitting the erroneously admitted evidence, the State met its burden at trial when it demonstrated that a false $100 bill had been submitted to the gas station clerk; the gas station clerk immediately identified Stewart as the person who had submitted the

---

[11] The State incorrectly applies the harmless error standard for nonconstitutional errors in its brief. See, e.g., Inman v. State, 4 N.E.3d 190, 197 (Ind. 2014) ("Trial court error is harmless if the probable impact of the error on the jury, in light of all the evidence, is sufficiently minor such that it does not affect the substantial rights of the parties.") (quotations omitted). But the State's argument would not have been significantly different had it identified the correct standard. Indeed, Mack does not suggest or otherwise argue in his reply brief that the State's mistake is somehow fatal to its argument; rather, Mack addresses only the merits of whether the error is harmless or reversible. We do so as well.

counterfeit bill; Officer Wallace approached Stewart in the gas station parking lot, and that same day Stewart agreed to take the officers to Ashby's residence while wearing a wire;[12] Mack was staying at Ashby's residence; the false $100 bill had originally been a $5 bill, but it had been bleached and then printed over using a 3-in-1 printer; and Mack was in possession of a 3-in-1 printer, which had been hidden and was only discovered after officers looked inside a closet, removed a firearm, found a trap door under the firearm, found a bag under the trap door, and found the printer inside that bag. Also inside the bag was a photocopy of a $100 bill on a normal sheet of paper, along with various letters addressed to Mack and photographs of Mack's family.

Considering only the properly admitted evidence, Officer Simpson's single, isolated comment that Stewart had said he heard Mack talk about buying degreaser did not contribute to Mack's forgery conviction within any reasonable possibility. See, e.g., Moore, 669 N.E.2d at 740. As such, the erroneous admission of Stewart's statements was harmless beyond a reasonable doubt. And because the erroneous admission of this evidence is harmless under the heightened standard for constitutional errors, the error under Indiana Evidence Rule 803(1) is likewise harmless. We affirm Mack's conviction for forgery.

### Officer Smith's Testimony

Mack next contends that the trial court abused its discretion when it permitted Officer Smith to testify that she had met with Mack prior to the execution of the search

---

[12] On appeal, Mack states that the information from the gas station clerk and Stewart at the gas station, which ultimately identified Mack as the producer of the counterfeit bill, was "third-hand hearsay." Appellant's Br. at 11. But Mack did not object to the admission of this evidence in the trial court, and, in any event, he does not support his comment on appeal with cogent argument. This issue is waived.

19

warrant. According to Mack: "[t]here was no need for the jury to hear about the events regarding Smith's monitoring of Mack whether the word 'parole' was heard by the jury or not." Appellant's Br. at 23. As such, Mack continues, "the prejudicial effect of [the] relevant evidence substantially outweighs its probative value." Id.

We cannot say that the trial court abused its discretion when it permitted Officer Smith to state that she had met with Mack prior to the execution of the search warrant while it simultaneously prohibited the State from explaining Officer Smith's relationship to Mack. Although Indiana Evidence Rule 403 permits a trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice," we give the trial court "wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission." Pope v. State, 740 N.E.2d 1247, 1241 (Ind. Ct. App. 2000).

Here, contrary to Mack's argument on appeal, Officer Smith's testimony had a high degree of probative value. Officer Smith testified that she had met with Mack and Ashby on January 11 and with Mack and Ashby's son on February 8. Officer Smith then testified that, after speaking with Officer Wallace, she attempted to meet with Mack again at his residence on Aulenbach Avenue. However, because Mack's brother informed Officer Smith that Mack did not live there, Officer Smith attempted to locate Mack on Woodside Drive. She and Officer Harrison eventually did so when they found Mack at Ashby's residence, and in doing so the officers observed firearms in the residence.

This testimony was highly probative to connect Mack to the residence and to the firearms, which directly related to each of the State's charges. And, again, the trial court expressly prohibited the State from allowing Officer Smith to explain her relationship to Mack or that she was monitoring him. We cannot say that the trial court abused its discretion when it concluded that the probative value of Officer Smith's testimony that she had met with Mack prior to the execution of the search warrant was not substantially outweighed by the danger of unfair prejudice to Mack.[13]

### Issue Two: Sufficiency of the Evidence

Mack also asserts that the State failed to present sufficient evidence to support each of his four convictions. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the judgment and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id. We address each of Mack's convictions in turn.

---

[13] And neither can Mack demonstrate error from a subsequent juror question, in which a juror asked Officer Smith what agency she was with and how she knew Mack. The trial court did not allow the question and instructed the jury that it may not speculate on why the question was not asked or what the answer may have been. "When the jury is properly instructed, we will presume they [sic] followed such instructions." Duncanson v. State, 509 N.E.2d 182, 186 (Ind. 1987).

For the same reasons the erroneous admission of Stewart's testimonial hearsay was harmless beyond a reasonable doubt, the State presented sufficient evidence to support Mack's conviction for forgery, as a Class C felony.

Mack's Other Convictions

Mack also asserts that the State failed to present sufficient evidence to support his convictions for possession of a firearm by a serious violent felon, as a Class B felony; maintaining a common nuisance, as a Class D felony; and possession of marijuana, as a Class A misdemeanor. Mack's argument against each of these convictions is the same: he asserts that the State failed to demonstrate that he had a sufficient possessory interest in Ashby's residence. To prove the nuisance charge, the State had to show, among other undisputed elements, that Mack knowingly or intentionally "maintain[ed]" 3587 Woodside Drive, that is, that he could exert control over the premises. I.C. § 35-48-4-13(b)(1); see Jones v. State, 807 N.E.2d 58, 66-67 (Ind. Ct. App. 2004), trans. denied. And to prove the charges for possession of a firearm and possession of marijuana, the State had to show, again, among other things, that Mack knowingly or intentionally possessed those items. I.C. §§ 35-47-4-5, 35-48-4-11(1).

Maintaining a structure as a common nuisance "does not require [the defendant's] actual ownership of the premises." Allen v. State, 798 N.E.2d 490, 501 (Ind. Ct. App. 2003). Rather, a structure "'used as a residence is controlled by the person who lives in it, and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee.'" Id. (quoting Davenport v. State, 464 N.E.2d

22

1302, 1307 (Ind. 1984)).  As discussed above regarding the admissibility of Officer Smith's testimony, the State presented ample evidence to demonstrate that Mack was living at 3587 Woodside Drive.  Further, in the execution of the search warrant, the State seized numerous articles of clothing, bathroom supplies, and letters and pictures belonging to Mack from that residence.  Again, a structure "used as a residence is controlled by the person who lives in it."  Id. (quotations omitted).  Mack's argument on appeal that the State failed to present sufficient evidence to show that Mack could exercise control over the premises is merely a request for this court to reweigh the evidence, which we will not do.  Thus, we affirm Mack's conviction for maintaining a common nuisance, as a Class D felony.

We likewise affirm Mack's convictions for possession of a firearm by a serious violent felon and possession of marijuana.  Possession of contraband need not be actual but, rather, can be constructive.  See, e.g., Holmes v. State, 785 N.E.2d 658, 660 (Ind. Ct. App. 2003).  As we have explained:

> Constructive possession is established by showing that the defendant has the intent and capability to maintain dominion and control over the contraband. . . .  [W]hen possession of the premises is non-exclusive, the inference [of control] is not permitted absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it.  Among the recognized "additional circumstances" are:  (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband is in plain view; and (6) location of the contraband is in close proximity to items owned by the defendant.

Id. at 660-61 (citations omitted).  And, again, a person in control of a residence "may be found in control of any drugs" or other contraband "discovered therein."  Allen, 798 N.E.2d at 501.

23

The State met its burden to show that Mack constructively possessed the firearms and marijuana. Officer Smith testified that one of the firearms was in plain view by the main entry into the residence when she visited Mack prior to the application for the warrant. And, in executing the warrant, officers found several other firearms, along with marijuana, in the bedroom where they found numerous items belonging to Mack, including his clothing and the bag that contained the 3-in-1 printer and numerous letters and photographs belonging to Mack. Again, Mack's arguments to the contrary on appeal are merely requests for this court to reweigh the evidence, which we will not do. We affirm Mack's convictions for possession of a firearm by a serious violent felon, as a Class B felony, and possession of marijuana, as a Class A misdemeanor.

## Conclusion

In sum, we affirm Mack's convictions.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.