## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 29 2015, 9:11 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Graham T. Youngs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tony Julian, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | May 29, 2015 <br><br> Court of Appeals Case No. 48A02-1407-CR-477 <br><br> Appeal from the Madison Circuit Court, the Honorable Thomas Newman, Jr., Judge <br><br> Trial Court Case No. 48C03-1211-FB-2213 |

**Mathias, Judge.**

[1] Tony Julian ("Julian") appeals his convictions in Madison Circuit Court for Class B felony dealing in methamphetamine, Class D felony possession of chemical reagents or precursors with the intent to manufacture a controlled substance, Class D felony maintaining a common nuisance, and Class A

misdemeanor false informing. Julian raises three issues on appeal, which we restate as the following two: 1) whether the trial court committed fundamental error by admitting into evidence items seized during the warrantless search of Julian's apartment; and 2) whether the State presented sufficient evidence to prove that Julian constructively possessed the evidence seized during the search of his apartment.

## Facts and Procedural History

[2] On November 28, 2012, Madison County Drug Task Force Officer Leann Dwiggins ("Officer Dwiggins"), who was investigating methamphetamine activity in Anderson, was attempting to serve an arrest warrant on Christopher Douglas ("Douglas"). Officer Dwiggins learned that Douglas might be hiding in an apartment located at 2325 Broadway.

[3] Detective Cliff Cole ("Detective Cole") proceeded to the apartment at that address, which was leased to Julian and described as an "upstairs apartment behind the Sunny Bunny." Tr. p. 157. As Detective Cole approached the front door, he noticed a odor that he associated with the manufacture of methamphetamine. The detective knocked on the front door and announced his presence. Julian responded and identified himself without opening the door. Julian also told the Detective Cole that Douglas was not inside the apartment and denied the detective's request to enter his apartment.

[4] Given the danger inherent in manufacturing methamphetamine, Detective Cole determined that it was necessary to enter Julian's apartment to ensure the safety

of the residents and neighbors. Another detective with the task force assured Detective Cole that it was permissible to enter the apartment due to the safety risks inherent in manufacturing methamphetamine.

[5] Detective Cole returned to the front door of the apartment and knocked. He asked Julian to open the door. When Julian refused, the detective told him that he had three seconds to open the door before the detective forced it open.

[6] Julian opened the door and Detective Cole entered the apartment. The chemical smell associated with the manufacture of methamphetamine was strong. Detective Cole and accompanying officers quickly located Douglas hiding inside the bathroom in the apartment. Julian stated that he was not aware that Douglas was inside his apartment.

[7] Detective Cole continued to search the apartment because, due to the strength of the odor, he believed that either methamphetamine had been recently manufactured or an active methamphetamine lab was inside the residence. In a closet, Detective Cole located a backpack and a green storage tote. He opened the lid to the tote and unzipped the backpack. The detective found a methamphetamine kit, i.e. funnels, pliers, a hair dryer, and Coleman fuel. In the kitchen, the odor was especially strong, and the detective found a trash bag. Through the plastic bag, Detective Cole saw what he believed to be a "one pot" methamphetamine lab. Julian told the officers he did not know that the items were in his apartment.

[8] Julian then gave the officers permission to search the rest of the apartment, and they found 3.02 grams of methamphetamine in Julian's bathroom where Douglas had been hiding. The officers also found stripped lithium batteries and casings, soiled coffee filters, a strainer, a plastic bottle with a tube running from it, lye, drain opener, more bottles of Coleman fuel, and rock salt. All of these items are commonly used in the manufacture of methamphetamine.

[9] Julian was charged with Class B felony dealing in methamphetamine, Class D felony possession of methamphetamine, Class D felony possession of chemical reagents or precursors with the intent to manufacture a controlled substance, Class D felony maintaining a common nuisance, and Class A misdemeanor false informing. A jury trial was held on May 15, 2014.

[10] At trial, Douglas testified that he and Julian had an agreement that Douglas could manufacture methamphetamine in his apartment in exchange for one-half gram of the resulting methamphetamine. Douglas stated that Julian was inside the apartment when he began the manufacturing process but left the apartment for approximately forty minutes. Julian testified that he allowed Douglas to stay in the apartment but did not know that Douglas was manufacturing methamphetamine until he returned to the apartment a few minutes before the police arrived.

[11] The jury returned a guilty verdict on all counts except Class D felony possession of methamphetamine. The trial court ordered Julian to serve an aggregate ten-year sentence for his Class B felony dealing in methamphetamine, Class D

felony possession of chemical reagents or precursors with the intent to manufacture a controlled substance, Class D felony maintaining a common nuisance, and Class A misdemeanor false informing convictions. Julian now appeals.[1]

# I. Fundamental Error

[12] Julian argues that the warrantless entry into his apartment violated his rights under the Fourth Amendment to the United States Constitution and Article One, Section Eleven of the Indiana Constitution. However, at trial, Julian affirmatively stated that he had no objection to the admission of the evidence seized during the warrantless search. An "'appellant cannot on the one hand state at trial that he has no objection to the admission of evidence and thereafter in this Court claim such admission to be erroneous.'" *Halliburton v. State*, 1 N.E.3d 670, 678-79 (Ind. 2013) (quoting *Harrison v. State*, 258 Ind. 359, 363, 281 N.E.2d 98, 100 (1972)). Consequently, Julian has waived appellate review of his claim of error.[2] *See, e.g., Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (holding that defendant, who did not object to evidence upon introduction of evidence and who affirmatively stated he had no objection, waived review of his argument that evidence was unlawfully seized).

---

[1] We held oral argument in this case at Cathedral High School in Indianapolis, Indiana on April 20, 2015. We extend our gratitude to the administration, faculty, and students for their generous hospitality. We would also like to congratulate the Cathedral High School "We the People" Team for being named Indiana State Champions for the 2014-15 school year. We also thank counsel for their written and oral advocacy.

[2] In his appellate brief, Julian cites to Article One, Section Eleven and to the correct standard. However, he failed to present argument separate from his analysis of his Fourth Amendment claim. Therefore, he also waived his Article One, Section Eleven claim for the purposes of appeal. *See Russell v. State*, 993 N.E.2d 1176, 1181 (Ind. Ct. App. 2013).

However, "[a] claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred." *Id.*; *see also Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) (stating that "'[f]ailure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error'") (citation omitted). "The fundamental error exception is 'extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Brown*, 929 N.E.2d at 207 (citation omitted).

In his brief, Julian cites the correct authority discussing the fundamental error standard, but he argues only that "warrantless entry into the residence . . . and subsequent search was not only a violation of his constitutional rights under" the Fourth Amendment and Article One, Section Eleven, "but was fundamental error." Appellant's Br. at 7. Julian does not explain how admission of the evidence found during the search of his apartment denied him fundamental due process. Julian has therefore waived this argument for the purposes of appeal. *See* Ind. Appellate Rule 46(A)(8)(a); *Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006).

Waiver notwithstanding, Julian faces the heavy burden of demonstrating that the "alleged errors are so prejudicial to the defendant's rights as to 'make a fair trial impossible.'" *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)).

In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm. The element of such harm is not established by the fact of ultimate conviction but rather depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled.

*** 

We stress that "[a] finding of fundamental error essentially means that the trial judge erred . . . by not acting when he or she should have. . . ." Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error.

*Id.* at 668 (internal citations omitted).

[16]  Detective Cole's initial warrantless entry into Julian's apartment did not violate the Fourth Amendment because the odor of methamphetamine manufacturing is an established exigent circumstance. *See Holder v. State*, 847 N.E.2d 930 (Ind. 2006) (holding that if probable cause exists to believe that an occupied residence contains a methamphetamine laboratory, then exigent circumstances exist to permit a warrantless search of the residence to ensure the safety of the occupants). Even if we assume for the sake of argument that Detective Cole's continued warrantless search of Julian's apartment after his initial walk through did not yield any evidence of an active methamphetamine lab violated the

Fourth Amendment, under the facts and circumstances of this case, Julian was not denied the right to a fair trial.

[17] Even though the evidence seized during the warrantless search significantly contributed to Julian's conviction, Julian specifically declined to object to admission of the evidence. *See* Tr. p. 141 (referring to the photographs of the items found in Julian's apartment and stating "I'm going to allow each and everyone [*sic*] of them in"); *see also Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005) (stating that a party may not take advantage of an error that he invites). Julian declined to object because his defense at trial was that he was not aware that Douglas planned to manufacture methamphetamine in his apartment and he was not present in the apartment during the manufacture. Accordingly, any error in the admission of that evidence did not affect Julian's right to "ascertainment of truth," particularly in light of his chosen defense. For all of these reasons, we conclude that the trial court did not commit fundamental error by failing to *sua sponte* suppress the evidence seized during the warrantless search.

## II. Sufficient Evidence

[18] Finally, Julian argues that the State failed to prove that he actually or constructively possessed the items used to manufacture methamphetamine that were discovered during the search of his apartment; therefore, his convictions are not supported by sufficient evidence. When the sufficiency of evidence is challenged, we neither reweigh the evidence nor judge the credibility of

witnesses. *Chappell v. State*, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans. denied*. Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence, and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If substantial evidence of probative value exists from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

[19] On the date he committed the offenses, Julian's crimes were statutorily defined as follows:

> **Class B felony dealing in methamphetamine**: "A person who: knowingly or intentionally manufactures . . . methamphetamine, pure or adulterated . . . commits dealing in methamphetamine[.]" And manufacturing is defined as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container." I.C. §§ 35-48-4-1.1(a); 35-48-1-18.

> **Class D felony maintaining a common nuisance**: "A person who knowingly or intentionally maintains a building, structure, vehicle, or other place that is used one (1) or more times . . . by persons to unlawfully use controlled substances; or . . . for unlawfully" manufacturing, keeping, offering for sale, selling, delivering, or financing the delivery of controlled substances, or items of drug paraphernalia as described in IC 35-48-4-8.5;

commits maintaining a common nuisance[.]" I.C. § 35-48-4-
13(b).

**Class D felony possession of chemical reagents or precursors**:
"A person who possesses two (2) or more chemical reagents or
precursors with the intent to manufacture a controlled substance
commits a Class D felony." I.C. § 35-48-4-14.5(e).

*See also* Appellant's App. pp. 10-11.

[20] A person may be convicted of an offense if he actually or constructively

possesses the contraband. *See Mack v. State*, 23 N.E.3d 742, 759 (Ind. Ct. App.

2014).

> Constructive possession is established by showing that the
> defendant has the intent and capability to maintain dominion
> and control over the contraband. . . . [W]hen possession of the
> premises is non-exclusive, the inference [of control] is not
> permitted absent some additional circumstances indicating
> knowledge of the presence of the contraband and the ability to
> control it. Among the recognized "additional circumstances" are:
> (1) incriminating statements by the defendant; (2) attempted
> flight or furtive gestures; (3) a drug manufacturing setting; (4)
> proximity of the defendant to the contraband; (5) contraband is
> in plain view; and (6) location of the contraband is in close
> proximity to items owned by the defendant.

*Id.* And, "'a residence is controlled by the person who lives in it, and that

person may be found in control of any drugs'" or contraband discovered

therein, "'whether he is the owner, tenant, or merely an invitee.'" *Id.* at 758

(quoting *Allen v. State*, 798 N.E.2d 490, 501 (Ind. Ct. App. 2003)).

[21] Julian argues that the evidence is insufficient to support his convictions because

he did not have exclusive possession of his apartment. Douglas was inside

Julian's apartment, although with Julian's consent. Also, Julian testified that left Douglas alone in the apartment for a significant period of time and returned home shortly before the police arrived.

[22] However, Julian's self-serving testimony was weighed against Douglas's testimony that Julian allowed Douglas to use his apartment to "cook" methamphetamine, and in exchange, Douglas gave him a portion of the resulting methamphetamine. On the date the offenses were committed, Julian allowed Douglas to enter his apartment, and Douglas had a backpack and tote containing the chemicals and precursors necessary to "cook" methamphetamine. Julian was inside the apartment when Douglas began manufacturing and returned to the apartment approximately forty-five minutes later. When the officers arrived at Julian's apartment just a few minutes after Julian returned home, the odor the officers associated with the manufacture of methamphetamine was strong. Therefore, the officers believed that either an active methamphetamine lab was in the apartment or methamphetamine had recently been manufactured.

[23] At trial, Julian admitted that he knew that Douglas was a "meth cooker." Tr. p. 262. He also testified that he knew that Douglas had been manufacturing methamphetamine in his apartment "[a]t the time the police came." Tr. p. 262. Julian also admitted that he lied to the officers when he told them that Douglas was not in his apartment.

[24] Finally, Julian argues that mere possession of the chemicals reagents and precursors is not sufficient evidence to prove that he manufactured methamphetamine. However, the officers found methamphetamine in Julian's bathroom, the odor associated with the manufacture of methamphetamine emanated from the apartment, and Detective Cole found a "one-pot" methamphetamine lab in the trash in the apartment.

[25] For these reasons, we conclude that the State's evidence establishing Julian's control over the apartment, the agreement between Douglas and Julian,[3] and Julian's own admissions and inconsistent statements are sufficient evidence that Julian committed Class B felony dealing in methamphetamine, Class D felony possession of chemical reagents or precursors with the intent to manufacture a controlled substance, and Class D felony maintaining a common nuisance.

## Conclusion

[26] The trial court did not commit fundamental error by admitting into evidence the items seized during the warrantless search of Julian's apartment. The evidence is sufficient to support Julian's convictions.

[27] Affirmed.

Kirsch, J., and Bradford, J., concur.

---

[3] The jury was instructed on accomplice liability at trial. *See* I.C. § 35-41-2-4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]"); Tr. p. 308.