## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 19 2016, 6:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Craig Persinger
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maurice Knight, Sr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 19, 2016<br><br>Court of Appeals Case No.<br>27A02-1506-CR-517<br><br>Appeal from the<br>Grant Superior Court<br><br>The Honorable<br>Jeffrey D. Todd, Judge<br><br>Trial Court Cause No.<br>27D01-1301-FB-7 |

**Kirsch, Judge.**

[1] Maurice Knight, Sr. ("Knight") was convicted after a jury trial of unlawful possession of a firearm by a serious violent felon ("SVF"),[1] a Class B felony, and was sentenced to eighteen years executed. He appeals and raises the following restated issues for our review:

> I. Whether the State presented sufficient evidence to support his conviction; and

> II. Whether his sentence was inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] In January 2013, Morgan Creech ("Creech") was living with her father at a residence located on East 27th Street in Marion, Indiana. On January 9, at approximately 7:00 p.m., Creech was outside in the yard with her boyfriend when Knight, who lived next door, came to the fence between the properties. Knight angrily accused Creech of stealing his dog, and his demeanor scared Creech. Knight placed his hands on the fence and threatened to jump over it and go into Creech's house to look for the dog. Creech did not have Knight's dog, but offered to allow Knight to come inside the house to look for the dog.

---

[1] *See* Ind. Code § 35-47-4-5(c). We note that, effective July 1, 2014, a new version of this criminal statute was enacted. Because Knight committed his crime prior to July 1, 2014, we will apply the statute in effect at that time.

Knight declined the offer. Creech called her father, who was not at home at the time, and informed him of what occurred. He told Creech to call the police, but she did not as she feared retaliation from Knight. Knight left his home at that time in a grey cargo van. He was wearing a white stocking hat and was seated in the passenger seat of the van.

[4] In the meantime, Creech's father had called the police to report what had transpired. Marion Police Department Officer Steve Pyle ("Officer Pyle") and Sergeant Kenneth Allen ("Sergeant Allen") arrived at Creech's residence a few minutes after Knight left his residence. Creech told the officers about her encounter with Knight and gave a description of Knight and the grey van. While Creech was speaking with the officers, a grey van pulled up to the corner of 27th and Terrace Streets. Officer Pyle asked Creech if the van resembled the one in which Knight had left, and Sergeant Allen shone his flashlight over the van. Creech stated that the van was the actual van in which she saw Knight leave.

[5] The officers got into their marked patrol car and pursued the van in order to speak with Knight about the incident with Creech. The officers caught up to the van, and Sergeant Allen activated the car's lights to initiate a traffic stop. Before the van stopped, Sergeant Allen twice saw the passenger door of the van open slightly and then close. The van pulled over to the side of the road and stopped. As Officer Pyle exited the passenger side of the patrol car, he observed the passenger door of the van open about twelve to eighteen inches and stay open for just about a second. Sergeant Allen also saw the passenger door open

and informed Officer Pyle, who confirmed to Sergeant Allen that he was aware of it. Officer Pyle walked to the passenger side of the van and yelled several times for the passenger to open the door and show his hands. Knight eventually complied and opened the door to exit the van. Officer Pyle ordered Knight, who was wearing a white stocking hat, to put his hands on the side of the van, which Knight did. Officer Pyle began to conduct a pat-down search.

[6] As he was patting Knight down, Officer Pyle observed a handgun in the snow just outside the passenger door and told Sergeant Allen about its presence. Officer Pyle began to handcuff Knight, who struggled and had to be taken to the ground. Officer Pyle later retrieved the handgun, which was sticking barrel first in the snow, with the butt of the gun visible. When the handgun was recovered from the snow, it did not have any snow on it. The handgun was determined to be a black, .22 caliber revolver.

[7] The State charged Knight with one count of unlawful possession of a firearm by a SVF, a Class B felony. A jury trial was held, and Knight was found guilty as charged. At sentencing, the trial court found Knight's extensive and "very significant" criminal history, which included crimes of intimidation and aggression and multiple probation violations, as an aggravating circumstance. *Tr*. at 283. The trial court found no mitigating circumstances and sentenced Knight to eighteen years executed. Knight now appeals.

# Discussion and Decision

## I. Sufficient Evidence

[8] The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Id*. A conviction may be based upon circumstantial evidence alone. *Boggs*, 928 N.E.2d at 864. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Tooley v. State*, 911 N.E.2d 721, 724-25 (Ind. Ct. App. 2009), *trans. denied*. As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[9] Knight contends that the evidence presented at trial was insufficient to support his conviction for unlawful possession of a firearm by a SVF. He does not claim that the State failed to prove that he was a SVF; he only argues that there was not sufficient evidence to prove that he possessed the handgun discovered in the snow next to the passenger door of the van. Knight asserts that he did not have actual possession of the handgun, and there was insufficient evidence to establish that he had constructive possession of the firearm. He specifically

alleges that the State did not prove any of the additional circumstances indicating his knowledge of the presence of the handgun and his ability to control it.

[10] In order to convict Knight of unlawful possession of a firearm by a SVF, the State was required to prove beyond a reasonable doubt that he was a SVF who knowingly or intentionally possessed a firearm. Ind. Code § 35-47-4-5(c). Knight only contends insufficient evidence was presented to prove that he possessed the handgun found by Officer Pyle. Possession of contraband need not be actual but, rather, can be constructive. *Mack v. State*, 23 N.E.3d 742, 759 (Ind. Ct. App. 2014), *trans. denied*. In order to establish constructive possession, the State must show that the defendant had both the intent and capability to maintain dominion and control over the handgun. *Id*. When possession of the premises where the contraband is found is non-exclusive, knowledge of presence of the contraband may not be inferred absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it. *Gaynor v. State*, 914 N.E.2d 815, 819 (Ind. Ct. App. 2009), *trans. denied*. Among the recognized "additional circumstances" are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband is in plain view; and (6) location of the contraband is in close proximity to items owned by the defendant. *Id*. at 819-20.

[11] Here, the evidence presented showed that Knight was the passenger in the grey van pursued by the police. Before the van stopped, Officer Pyle observed the

passenger door open twice, and an inference could be made that Knight was attempting to discard contraband, such as the handgun at that time. At the time the van was pulled over on the side of the road, Knight opened the passenger door approximately twelve to eighteen inches, and the door remained open for just about a second, which was enough time for Knight to drop the unlawfully possessed handgun into the snow next to the van. After Office Pyle was able to get Knight to exit the van, he began to pat him down and immediately saw the handgun in the snow. The handgun was located just outside of the passenger door of the van, which was in close proximity to Knight. Officer Pyle testified that the handgun was in a location that Knight could have easily reached down, grabbed it, and used it against the officers. *Tr.* at 105.

[12] The evidence, therefore, established that the handgun was in close proximity to Knight, in plain view as Officer Pyle noticed it immediately, and easily accessible to Knight. Additionally, the handgun had not been in the snow for any length of time as it was not covered in snow. Further, there were no footprints in the area where the handgun was discovered. Based on the evidence presented, the jury could have reasonably inferred that Knight had both the intent and capability to maintain dominion and control over the handgun and, thus, had constructive possession of the handgun. We conclude that the evidence was sufficient to support Knight's conviction for unlawful possession of a firearm by a SVF.

# II. Inappropriate Sentence

Under Indiana Appellate Rule 7(B), "we may revise any sentence authorized by statute if we deem it to be inappropriate in light of the nature of the offense and the character of the offender." *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014). The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. *Chappell v. State,* 966 N.E.2d 124, 133 (Ind. Ct. App. 2012), *trans. denied.*

Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224.

Knight argues that his eighteen-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Knight concedes that the trial court properly took his extensive criminal history into consideration when it sentenced him and that this court may "rightfully conclude that [his]

criminal history reflects poorly on his character." *Appellant's Br*. at 9. However, he contends that the nature of his crime involved nothing that "would shock the conscience of the average person or which could fairly be characterized as representing the mindset of a hardened criminal." *Id*. Knight asserts that the circumstances of the present case do not lend themselves to an eighteen-year sentence because no threats of physical harm were made, no weapons were displayed or used, and his neighbor's property was never invaded.

[16] Knight was convicted of Class B felony unlawful possession of a firearm by a SVF. A person who commits a Class B felony shall be imprisoned for a fixed term of between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5. Here, the trial court sentenced Knight to eighteen years executed.

[17] Looking to the nature of the offense, this case began when Knight aggressively confronted his neighbor, Creech, about his missing dog. After the police were called and were able to stop Knight, they observed that he was in constructive possession of a handgun that he had discarded from the passenger door of the van. Although Knight was not in actual possession of the handgun when the police approached him, Officer Pyle testified that the handgun was located in close proximity to Knight and that Knight could have easily reached down, grabbed it, and used it against the officers. *Tr*. at 105. It was also proven at trial that Knight was a SVF as he had a prior conviction for attempted robbery, the commission of which made him a SVF. Ind. Code § 35-47-4-5(a)(2), (b)(12).

[18]    Considering Knight's character, he has an extensive criminal history that includes crimes of aggression, violence, and intimidation. As a juvenile, Knight had seven adjudications for offenses such as incorrigibility, battery, and possession of a handgun. As an adult, Knight has been convicted of eleven felonies, twenty-six misdemeanors, and nine probation violations. Many of Knight's convictions are for domestic battery, invasion of privacy, intimidation, or battery. As evidenced by this lengthy history of criminal convictions, Knight has been committing crimes the majority of his adult life. His criminal history demonstrates his unwillingness and inability to lead a law-abiding life and his contempt for the law and the authority of the court. Knight's past convictions have not caused him to change his behavior, and he continued to commit criminal offenses even after being arrested for the present offense. Knight's character does not support a determination that his sentence is inappropriate. We, therefore, conclude that Knight's sentence is not inappropriate in light of the nature of the offense and the character of the offender.

[19]    Affirmed.

[20]    Mathias, J., and Brown, J., concur.